HENRY WUNSCH, *Appellant*, v. GUSTAVA WUNSCH et al., *Appellees.*

No. 18,350.

##### HEADNOTE BY THE REPORTER.

INJUNCTION—*Building and Loan Association Stock—Ownership.* In an action by a husband to restrain a building and loan association from paying to his wife money due on certificates of stock standing in the name of the wife, the evidence was sufficient to show that the wife was the owner of the stock certificates.

Appeal from Shawnee district court, division No. 1. Opinion filed July 5, 1913. Affirmed.

*E. R. Simon,* and *James A. McClure,* both of Topeka, for the appellant.

*W. I. Jamison,* and *W. R. Hazen,* both of Topeka, for the appellees.

*Per Curiam:* The appellant and the appellee are, and during all the time referred to were, husband and wife. For many years prior and subsequent to the purchase of the shares of stock in question the appellant was in the employ of the Atchison, Topeka & Santa Fe Railway Company and received his monthly salary in a check about the fifteenth of each month. The ap-

pellee did the household work, received from her husband his pay check and purchased the household supplies. It appears that for some years prior to the purchase of the shares of stock in question the appellant had purchased and made monthly payments upon a like number of shares in the same building and loan association, the matured par value of which was likewise $1000. About July 16, 1901, the appellant suggested to appellee that they could save more money by buying five more shares and directed her to do so, which she did from the proceeds of his check, taking out the shares in her own name. There was some conflict in the testimony as to what was said about taking out the latter five shares but there is evidence that appellant said, "We could spare it; that we had the other debts on the property paid. You take five shares out for you." Also that appellee got $280 from her father's estate and $300 from her godfather; that the $280 and about $100 of the $300 received from her godfather was used in paying debts and living expenses of the family; also that appellant said to appellee, referring to this, "I will pay it back."

Later there was some trouble between the parties and talk of a divorce. A daughter testified that the appellant said the mother would have the $1000 and he would have the rest of the property; also that he was paying $5 per month in the Shawnee Building & Loan Association for her; that he was paying this money in the building and loan association to cover money she had gotten at the time; that he referred to money the mother had received from the old country which had gone to pay some of appellant's debts or debts on the house.

There is also evidence that shortly after appellee took out the shares of stock in her own name appellant demanded of her possession of the certificates and that she surrendered them to him on his saying that if she did not do so he would stop the payment.

The appellant in argument urges that the case is to be settled upon the principles of a gift *inter vivos* and that there is no evidence that it was a completed gift at any time but at most only a promise to give the shares of stock when the payments were completed.

The court, however, evidently considered the evidence in regard to the payment by him of indebtedness to her and of an equitable division, in part, of their property; that the appellant had directed appellee to take out five shares for herself and she did so; that the appellant had several thousand dollars' worth of property, accumulated by their joint efforts, held in his own name at the time of the bringing of this suit, and decided that under all the circumstances of the case and in equity the appellee was entitled to the shares of stock and rendered judgment accordingly.

The judgment is amply sustained by the evidence, and is affirmed.