**HEIL VALLEY RANCH, INC., a Colorado corporation,**
**Petitioner,**

v.

**Roane SIMKIN, Respondent.**

**No. 88SC418.**

Supreme Court of Colorado,
En Banc.

Dec. 18, 1989.

Rehearing Denied Jan. 16, 1990.

Hall & Evans, David R. Brougham and Malcolm S. Mead, Denver, for petitioner.

George T. Ashen and M. Paula Ashen, Denver, for respondent.

Justice ERICKSON delivered the Opinion of the Court.

We granted certiorari to decide whether a release or exculpatory agreement purporting to waive "any claim [plaintiff] might state against the [defendant] as a result of physical injury incurred" while horseback riding is clear and unambiguous under *Jones v. Dressel,* 623 P.2d 370, 376–78 (Colo.1981). The court of appeals held that the agreement in this case, which did not use the word "negligence" in its exculpatory provision, was void because it was ambiguous. *Simkin v. Heil Valley Ranch, Inc.,* 765 P.2d 582, 584–85 (Colo. App.1988). We conclude that a valid release or exculpatory agreement need not

invariably contain the word "negligence," and that under the facts and circumstances of this case the agreement was sufficiently clear and unambiguous to be given effect. Accordingly, we reverse the court of appeals and remand with directions to reinstate the judgment of the district court in favor of the defendant Heil Valley Ranch, Inc. (Heil Valley).

## I.

On the morning of July 17, 1983, plaintiff Roane Simkin arrived at the Heil Valley Ranch in Boulder County to go horseback riding with a group of friends.[1] Before any of the participants in the ride were allowed to mount their rented horse they were required to come into the ranch's office and sign the following purported release of liability:

This is a Release of Liability

Please Read Before Signing

UPON MY ACCEPTANCE OF HORSE AND EQUIPMENT, I ACKNOWLEDGE THAT THE USE, HANDLING AND RIDING OF A HORSE INVOLVES A RISK OF PHYSICAL INJURY TO ANY INDIVIDUAL UNDERTAKING SUCH ACTIVITIES; AND THAT A HORSE, IRRESPECTIVE OF ITS TRAINING AND USUAL PAST BEHAVIOR AND CHARACTERISTICS, MAY ACT OR REACT UNPREDICTABLY AT TIMES BASED UPON INSTINCT OR FRIGHT WHICH, LIKEWISE, IS AN INHERENT RISK ASSUMED BY A HORSEBACK RIDER. THE UNDERSIGNED EXPRESSLY ASSUMES SUCH RISK AND WAIVES ANY CLAIM HE SHE MIGHT STATE AGAINST THE STABLES AS A RESULT OF PHYSICAL INJURY INCURRED IN SAID ACTIVITIES.[2] EXCEPT TO THE EXTENT SUCH CLAIM MIGHT BE BASED UPON THE SOLE AND EXCLUSIVE NEGLIGENCE OF THE STABLES THE UNDERSIGNED FURTHER AGREES TO HOLD THE STABLES HARMLESS FOR PHYSICAL INJURY TO OTHERS, OR FOR PROPERTY DAMAGE, WHICH RESULTS FROM RIDERS USE OF STABLES HORSE IN VIOLATION OF ANY STABLES' RULES OR THE TERMS AND CONDITIONS OF THIS AGREEMENT.

THIS AGREEMENT SHALL BE EFFECTIVE AND BINDING UPON THE PARTIES HERETO FOR THE DATE INDICATED. THE PARTIES HERETO ACKNOWLEDGE HAVING READ AND UNDERSTOOD THIS AGREEMENT.

At a hearing, Heil Valley presented evidence that before Simkin mounted her horse, she signed the agreement in the office. In his deposition, John Hillman, a Heil Valley employee, testified that Uncle Bud, another employee, told the first woman who wanted to ride Bill that the horse needed a good rider, and she said she would wait for the next horse. Simkin said "that's the horse for me." Uncle Bud asked Simkin if she "knew how to ride

1. Simkin testified at a deposition and at a hearing that she does not remember anything that occurred that morning except driving to the ranch and pushing her toes into the dirt after arriving at the ranch. Except for whether or not she actually signed the release, Simkin did not dispute the facts related here.

2. The release was in all capital letters. Simkin contended in the district court that the punctuation following "ACTIVITIES" was a comma. The district court concluded, however, that the mark was a period and that "EXCEPT TO THE EXTENT SUCH CLAIM ..." was the beginning of a new sentence.

Simkin did not raise or brief this punctuation argument in the court of appeals, nor was it raised in the briefs to this court, although it did surface during oral argument in response to questions from members of the court. The copy of the exculpatory agreement in the record is not legible enough to indisputably settle the point, although a reading with a period is less strained than with a comma. After the district court resolved the issue against Simkin, the parties proceeded as if the punctuation mark was a period. We are satisfied that Simkin did not raise or brief the issue in the court of appeals, however, so we do not address it here. *See Heginbotham v. Webster*, 55 Colo. 111, 111–12, 133 P. 740, 741 (1913); *cf. Tull v. Gundersons, Inc.*, 709 P.2d 940, 945 n. 5 (Colo.1985) (court would address issue though not decided by court of appeals where it would arise on remand and had been fully briefed in court of appeals).

good because [Bill] is spirited," and Simkin replied that "she worked on a dude ranch."

After Simkin mounted Bill, Hillman heard the horse walking backward and he "turned around and saw [Simkin], and saw that she had the reins tight, and I yelled at her to loosen up on the reins, and she didn't listen to me." Bill then reared up and fell backwards onto Simkin, injuring her severely.

Simkin sued Heil Valley for negligence[3] and breach of warranty.[4] Heil Valley pleaded the release as an affirmative defense, and moved for summary judgment. On August 2, 1985, the district court issued a partial summary judgment,[5] holding that the release was a valid exculpatory agreement under *Jones v. Dressel*, 623 P.2d 370, 376–78 (Colo.1981). In particular, the court held that the language of the exculpatory portion of the release was clear and unambiguous and thus shielded Heil Valley from claims based on negligence and breach of warranty.[6]

On appeal, the court of appeals reversed, finding that the release was not clear and unambiguous under *Jones v. Dressel. Simkin v. Heil Valley Ranch, Inc.*, 765 P.2d 582, 584–85 (Colo.App.1988). Judge Babcock dissented, concluding that the language in the agreement adequately reflected Simkin's intent to release Heil Valley for liability for her injury. *Id.* at 585.

## II.

Agreements attempting to exculpate a party from that party's own negligence have long been disfavored. *See Jones v. Walt Disney World Co.*, 409 F.Supp. 526, 528 (W.D.N.Y.1976); *Harris v. Walker*, 119 Ill.2d 542, 547–49, 116 Ill.Dec. 702, 704, 519 N.E.2d 917, 919 (1988); *see generally* An-

3. Simkin's complaint alleged that Heil Valley was negligent in the following ways:

    a. In inducing Plaintiff to mount the furnished horse when Defendant knew or should have known that said horse was of an uncontrollable nature and at times had an unsafe and dangerous disposition and Defendant also knew, or should have known, that said horse had on the same day of Plaintiff's accident shown such propensities by milling around, kicking, and acting in a dangerous manner.

    b. In failing to provide a horse commenserate [sic] with Plaintiff's ability.

    c. In providing Plaintiff with a horse which Defendant knew or should have known was unreasonably dangerous for the purpose for which said horse was provided to Plaintiff and others like Plaintiff.

    d. In failing to exercise care to furnish Plaintiff with a reasonably safe horse to ride.

    e. In failing to warn Plaintiff of the substantial risk of harm to Plaintiff by said horse when Defendant knew or should have known that said horse was extremely dangerous and had at times displayed an unreasonably dangerous disposition and propensity.

    f. That Defendant knew or should have known that the horse was not suitable and that Defendant did not advise or otherwise assist Plaintiff in getting a different horse or controlling same horse.

4. The second claim for relief for breach of warranty stated in part:

    2. That Defendant, Heil Valley Ranch, Incorporated, breached an implied warranty or express warranty and also breached a warranty of fitness for a particular purpose when Defendant furnished and supplied Plaintiff with said horse which Defendant knew or should have known was unreasonably dangerous to Plaintiff and others like Plaintiff. The Defendant further breached said warranties when the Defendant furnished and supplied Plaintiff with an unsafe and unreasonably dangerous horse and/or in failing to ascertain that such horse was in fact unsafe for the purpose intended.

    3. That the horse the Plaintiff mounted to ride was not suitable for the purpose for which it was hired.

    4. That as a direct and proximate consequence of Defendant's, Heil Valley Ranch, Incorporated's, breach of warranties, as aforesaid, the Plaintiff Roane Simkin, has suffered direct and consequential damages and injuries. . . .

5. The issue of whether Simkin had in fact signed the release was disputed and was reserved for trial. Because of her injuries Simkin did not remember if she signed it or not. The parties agreed to submit the issue to the court sitting without a jury. After holding a hearing, the district court concluded that Simkin had signed the release and accordingly entered a final judgment in favor of Heil Valley. Simkin has not raised the issue of signing the release on appeal.

6. Simkin's complaint did not state a cause of action for willful and wanton negligence. *Cf. Jones v. Dressel*, 623 P.2d 370, 376 ("[I]n no event will [an exculpatory] agreement provide a shield against a claim for willful and wanton negligence.").

notation, *Validity of contractual provision by one other than carrier or employer for exemption from liability, or indemnification, for consequences of own negligence,* 175 A.L.R. 8, 18 (1948). They stand at the crossroads of two competing principles: freedom of contract and responsibility for damages caused by one's own negligent acts. *Harris v. Walker,* 119 Ill.2d at 549, 116 Ill.Dec. at 704, 519 N.E.2d at 919.

Exculpatory agreements are not necessarily void, however, as long as one party is not "at such obvious disadvantage in bargaining power that the effect of the contract is to put him at the mercy of the other's negligence." W. Keeton, D. Dobbs, R. Keeton, & D. Owen, *Prosser and Keeton on the Law of Torts* § 68, at 482 (5th ed. 1984) [hereinafter *Prosser*]. Thus, exculpatory agreements between employer and employee, and between common carriers or public utilities and members of the public are generally held invalid. *Id.* at 482–83; *see also* Restatement (Second) of Torts § 496B comments f & g (1965).[7] Such a contract is not implicated here.

*Jones v. Dressel* set forth the test for determining the validity of an exculpatory agreement:

In determining whether an exculpatory agreement is valid, there are four factors which a court must consider: (1) the existence of a duty to the public; (2) the nature of the service performed; (3) whether the contract was fairly entered into; and (4) whether the intention of the parties is expressed in clear and unambiguous language.

623 P.2d at 376. Only the fourth factor is an issue here. "The determination of the sufficiency and validity of an exculpatory agreement is a question of law for the court to determine." *Id.* Partial summary judgment on the validity of the instant agreement was therefore appropriate.

In *Jones v. Dressel,* the agreement that we upheld specifically included the word "negligence." *Id.* at 378. We therefore were not required to decide whether an exculpatory agreement, in order to bar an action based on negligence, must always use the term "negligence" or words of similar import. Courts in other jurisdictions, although uniformly agreeing that exculpatory agreements must be strictly construed against the drafter, are split on whether "negligence" must be specifically mentioned,[8] or whether more inclusive and general terms may be employed.[9] The

---

7. Restatement (Second) of Torts § 496B (1965) provides:

§ 496B. Express Assumption of Risk
A plaintiff who by contract or otherwise expressly agrees to accept a risk of harm arising from the defendant's negligent or reckless conduct cannot recover for such harm, unless the agreement is invalid as contrary to public policy.

8. *See, e.g., Jones v. Walt Disney World Co.,* 409 F.Supp. 526, 528 (W.D.N.Y.1976) (exculpatory clause providing waiver of any claims against amusement park arising out of injury sustained while horseback riding, but which did not specifically use term "negligence" did not exempt park from liability when horse threw plaintiff to ground; applying Florida law); *O'Connell v. Walt Disney World Co.,* 413 So.2d 444, 447 (Fla. App.1982) (same); *Calarco v. YMCA of Greater Metropolitan Chicago,* 149 Ill.App.3d 1037, 103 Ill.Dec. 247, 501 N.E.2d 268 (1986); *Gross v. Sweet,* 49 N.Y.2d 102, 424 N.Y.S.2d 365, 400 N.E.2d 306 (1979). *See also Prosser, supra* § 68, at 484 ("If the defendant seeks to use the agreement to escape responsibility for the consequences of his negligence, then it must so provide, clearly and unequivocally, as by using the word 'negligence' itself.").

9. *See, e.g., Lee v. Sun Valley Co.,* 107 Idaho 976, 977–78, 695 P.2d 361, 362–63 (1984) (agreement which simply stated that outfitter and guide would be held "harmless for every and all claim which may arise from injury" which occurred from use of horse and equipment, was unambiguous and applied to situation where horse reared and threw plaintiff after saddle loosened and began to slide forward); *Harris v. Walker,* 119 Ill.2d 542, 547–51, 116 Ill.Dec. 702, 704–05, 519 N.E.2d 917, 919–20 (1988) (release providing that "your signature shall release [defendant] and employees of any liabilities you may incur while on the premises or for any injury which may result from horseback riding," barred plaintiff's claim for injuries sustained when horse became "spooked" and threw him); *Cain v. Cleveland Parachute Training Center,* 9 Ohio App.3d 27, 27, 457 N.E.2d 1185, 1186 (1983) (release in which plaintiff "assume[d] all risks, hazards, and losses which may befall me in connection with my exercise of the permission and privilege allowed me hereunder [to parachute jump]" applied to claim against defendant based on negligence); *Moss v. Fortune,* 207 Tenn. 426, 428, 340 S.W.2d 902, 903 (1960) (agreement stating that plaintiff was "hiring [defendant's] horse to ride today and all future

court of appeals majority relied on the first line of cases to find the release invalid, in which the term "negligence" or similar words are always required. In dissent, Judge Babcock believed that "use of the talismanic terms 'negligence' and 'breach of warranty' was unnecessary to render the release effective." *Simkin,* 765 P.2d at 585 (Babcock, J., dissenting).

■ We agree that use of the specific terms "negligence" and "breach of warranty" are not invariably required for an exculpatory agreement to shield a party from claims based on negligence and breach of warranty. The inquiry should be whether the intent of the parties was to extinguish liability and whether this intent was clearly and unambiguously expressed. *Schutkowski v. Carey,* 725 P.2d 1057, 1061 (Wyo. 1986). In the present case, the agreement was written in simple and clear terms that were free from legal jargon. It was not inordinately long or complicated. When the agreement was read to Simkin at her deposition, she indicated that she understood it.

In addition, the first sentence of the release specifically addressed a risk that adequately described the circumstances of Simkin's injury. The record also supports the conclusion that Simkin was not a novice rider, but was instead one with some experience.[10] The risk that a horse could rear and injure her was reasonably foreseeable to someone with her experience.

In *Harris v. Walker,* 119 Ill.2d 542, 116 Ill.Dec. 702, 519 N.E.2d 917 (1988), the court held that a rider who fell off his rented horse when it became spooked could not sue the defendant stables for their negligence because of a release plaintiff signed. The release did not use the word "negligence," but said that "your signature shall release [defendant] and employees of any liabilities you may incur while on the premises or for any injury which may result from horseback riding." *Id.* at 549, 116 Ill.Dec. at 704, 519 N.E.2d at 919. The Illinois Supreme Court stated that "when the parties adopt broad language in a release, it is reasonable to interpret the intended coverage to be as broad as the risks that are obvious to experienced participants." *Id.* at 549, 116 Ill.Dec. at 705, 519 N.E.2d at 920.

■ Under the circumstances of this case, it is reasonable to interpret the broad language in the release to cover claims based on negligence or breach of warranty. It is difficult to imagine any claim that Simkin could have asserted against Heil Valley that would not have been based, at bottom, on negligence. It is unreasonable to interpret the agreement in a way that provides virtually no protection to Heil Valley, and renders the release essentially meaningless. We therefore hold that the district court properly found that the release was valid and enforceable.[11]

Accordingly, we reverse the judgment of the court of appeals, and remand the cause with directions to reinstate the judgment of the district court in favor of Heil Valley.

LOHR, J., dissents, and QUINN, C.J., and MULLARKEY, J., join in the dissent.

---

rides at my own risk," insulated defendant from liability where stirrup strap broke and plaintiff was thrown to the ground); *Schutkowski v. Carey,* 725 P.2d 1057, 1060–62 (Wyo.1986) (absence of term "negligence" not fatal if contract clearly shows intent to extinguish liability).

10. The testimony of Hillman that Simkin represented herself as a good rider, and that she said she was the appropriate rider for Bill, was not refuted. Also, Simkin testified that she first rode a horse at age seven, and continued to ride "quite a bit" in junior high and high school. She rode with a school club. Simkin was a reservations clerk during the summer at a Wyoming guest ranch and rode horses there. She was 22 years old at the time of the accident.

11. As an alternative reason for its decision reversing the district court, the court of appeals stated that even if the agreement was a valid assumption of the risk, it would still not be a total defense under comparative negligence principles. *Simkin,* 765 P.2d at 584. However, an *express* assumption of the risk by contract, as here, *does* constitute a total defense to an action based on negligence. *See Arbegast v. Board of Educ.,* 65 N.Y.2d 161, 168–70, 490 N.Y.S.2d 751, 757, 480 N.E.2d 365, 370–71 (1985); *see also Prosser, supra* § 68, at 496 ("an express assumption of risk by the plaintiff should continue to serve as a total bar in comparative negligence cases.").

Justice LOHR dissenting:

This case presents the issue of whether a release of liability signed by the plaintiff, Roane Simkin, was effective to absolve the defendant, Heil Valley Ranch, Incorporated (Heil Valley), from liability for any negligence or breach of warranty in connection with the rental of a horse to the plaintiff for a recreational ride. The majority opinion holds that the release was clear and unambiguous, and that it was effective to release Heil Valley from liability for the injury suffered by Simkin when the horse she had rented reared and fell backward on her. The majority opinion therefore reverses the judgment of the Colorado Court of Appeals, which held that the release of liability was ambiguous, and directs reinstatement of the judgment issued by the district court in favor of Heil Valley. I am persuaded that the release did not clearly absolve Heil Valley from liability for the conduct alleged by Simkin, and therefore respectfully dissent.

## I.

Roane Simkin rented a horse from Heil Valley on July 17, 1983, to participate in a breakfast ride at Heil Valley's ranch in Boulder County. Before entering upon the ride, Simkin signed a "Stable Ride Record" on which the places for signatures were prefaced by a "Release of Liability" in the following terms:

**This is a Release of Liability**
**Please Read Before Signing**

UPON MY ACCEPTANCE OF HORSE AND EQUIPMENT, I ACKNOWLEDGE THAT THE USE, HANDLING AND RIDING OF A HORSE INVOLVES A RISK OF PHYSICAL INJURY TO ANY INDIVIDUAL UNDERTAKING SUCH ACTIVITIES; AND THAT A HORSE, IRRESPECTIVE OF ITS TRAINING AND USUAL PAST BEHAVIOR AND CHARACTERISTICS, MAY ACT OR REACT UNPREDICTABLY AT TIMES BASED UPON INSTINCT OR FRIGHT WHICH, LIKEWISE, IS AN INHERENT RISK ASSUMED BY A HORSEBACK RIDER. THE UNDERSIGNED EXPRESSLY ASSUMES SUCH RISK AND WAIVES ANY CLAIM HE SHE MIGHT STATE AGAINST THE STABLES AS A RESULT OF PHYSICAL INJURY INCURRED IN SAID ACTIVITIES. EXCEPT TO THE EXTENT SUCH CLAIM MIGHT BE BASED UPON THE SOLE AND EXCLUSIVE NEGLIGENCE OF THE STABLES THE UNDERSIGNED FURTHER AGREES TO HOLD THE STABLES HARMLESS FOR PHYSICAL INJURY TO OTHERS, OR FOR PROPERTY DAMAGE, WHICH RESULTS FROM RIDERS USE OF STABLES HORSE IN VIOLATION OF ANY STABLES' RULES OR THE TERMS AND CONDITIONS OF THIS AGREEMENT.

THIS AGREEMENT SHALL BE EFFECTIVE AND BINDING UPON THE PARTIES HERETO FOR THE DATE INDICATED. THE PARTIES HERETO ACKNOWLEDGE HAVING READ AND UNDERSTOOD THIS AGREEMENT.

(The "release agreement"). After signing the release agreement, Simkin mounted her horse to commence the ride. At that time, Simkin's mount reared and fell on her. Simkin was severely injured and brought an action in Boulder County District Court, alleging negligence and breach of warranty by Heil Valley. The gravamen of each of the claims for relief was that the horse assigned to Simkin was unsafe and unreasonably dangerous and that these qualities were known to Heil Valley before the horse was rented to Simkin. *See* maj. op. at 783 nn. 3–4. In addition, the negligence claim specifically stated that Heil Valley Ranch failed to provide Simkin with a horse matched to her abilities as a rider.

Heil Valley moved for summary judgment, asserting the release agreement as a complete defense to Simkin's claims. The district court, relying on *Jones v. Dressel,* 623 P.2d 370 (Colo.1981), granted partial summary judgment for Heil Valley, holding the release agreement valid and enforceable. The court determined, however, that there was a genuine issue of material fact as to whether Simkin had signed the agreement. After a trial to the court on that

issue, the court found that Simkin had signed the release agreement. The court then entered judgment for Heil Valley. On appeal, a divided panel of the Colorado Court of Appeals concluded that the release agreement was ambiguous and reversed the district court's judgment. *Simkin v. Heil Valley Ranch, Inc.*, 765 P.2d 582 (Colo.App.1988).

## II.

As the majority acknowledges, agreements attempting to absolve a party from liability for that party's own negligence have long been disfavored. Maj. op. at 783. In *Jones v. Dressel,* we addressed the validity of exculpatory agreements. We held that the determination of the sufficiency and validity of such an agreement is a question of law for the court and that an exculpatory agreement must be closely scrutinized. *Jones*, 623 P.2d at 376. An exculpatory agreement must be strictly construed against the party seeking to limit its liability for negligence. *E.g., Barker v. Colorado Region—Sports Car Club of America, Inc.*, 35 Colo.App. 73, 80, 532 P.2d 372, 377 (1974); *Falkner v. Hinckley Parachute Center, Inc.*, 178 Ill.App.3d 597, 127 Ill.Dec. 859, 863, 533 N.E.2d 941, 945 (1989); *Nunes Turfgrass, Inc. v. Vaughan–Jacklin Seed Company, Inc.*, 200 Cal.App.3d 1518, 246 Cal.Rptr. 823, 835 (1988). In *Jones,* we set forth four factors that must be considered by a court in determining whether an exculpatory agreement is valid:

> (1) the existence of a duty to the public; (2) the nature of the service performed; (3) whether the contract was fairly entered into; and (4) whether the intention of the parties is expressed in clear and unambiguous language.

*Jones*, 623 P.2d at 376. In the present case, we granted certiorari to consider only the fourth factor as it applies to the release agreement at issue.[1]

The majority holds that the terms "negligence" and "breach of warranty" "are not invariably required for an exculpatory agreement to shield a party from claims based on negligence and breach of warranty. The inquiry should be whether the intent of the parties was to extinguish liability and whether this intent was clearly and unambiguously expressed." Maj. op. at 785. I agree with this test. I disagree, however, with the result reached by the majority in applying the test to the facts of the present case.

The release agreement begins with an acknowledgment that the "use, handling and riding of a horse" involves a risk of physical injury. It then states that a horse may act or react unpredictably based on instinct or fright notwithstanding its training and usual past behavior and that such "inherent risk" is assumed by the rider. The rider then "expressly assumes" such risk and waives any claim against the stables as a result of physical injury incurred in such activities. The risks described in the release do not extend beyond injuries resulting from the risks inherent in the nature of the activity and the unpredictableness of a horse.

Simkin, however, grounds her claims on specific negligent conduct of Heil Valley. She alleges that the defendant knew the particular horse assigned to her was uncontrollable and dangerous and that on the day of the ill-fated ride, the horse had "shown such propensities by milling around, kicking, and acting in a dangerous manner." Simkin alleged that Heil Valley failed to exercise care in providing her a reasonably safe horse to ride and in failing to furnish a horse matched to her abilities as a rider. The same alleged misconduct supplied the basis for Simkin's breach of warranty claim.

The misconduct alleged by Simkin is not referred to among the risks that the release agreement describes. That agreement simply acknowledges the existence of inherent risks because of the nature of horseback riding, including the unpredicta-

---

**1.** The majority opinion contains a "factual" discussion of the supposed negligence of Simkin and lack of negligence of Heil Valley. These "facts" are not relevant to the issue before us, which is simply the effectiveness of the release agreement by its own terms to absolve Heil Valley from any liability for negligence or breach of warranty.

bility of the behavior of any horse. It does not purport to absolve Heil Valley from using care to provide a horse suited to the abilities of the rider or to assure that a rider is not assigned a horse that has displayed characteristics making it unsuitable for recreational riding. *See O'Connell v. Walt Disney World Co.,* 413 So.2d 444, 448–49 (Fla.App.1982) (agreement to assume risks inherent in horseback riding did not encompass risk created by negligence of persons conducting the ride). Accordingly, the release did not purport to absolve Heil Valley from liability for the types of negligence and breach of warranty alleged by Simkin.[2]

Heil Valley relies upon the portion of the release stating that the rider waives "any claim" against the stables as a result of physical injury incurred in the use, handling and riding of a horse. This waiver must be read, however, in the context of the preceding language referring to risks inherent in horseback riding but making no mention of risks avoidable by the exercise of due care by the stables. This makes it at least ambiguous whether the release can be read to absolve Heil Valley from its own negligent acts in supplying a horse having characteristics unsuitable for recreational riding in general or by the person signing the release agreement in particular, as alleged by Simkin in this case. Any such ambiguity must be construed against Heil Valley, with the result that the release agreement does not provide a complete defense to Simkin's claims.

I dissent and would affirm the judgment of the court of appeals.

QUINN, C.J., and MULLARKEY, J., join in this dissent.

---

**2.** The majority opinion reads the court of appeals' opinion to be based on cases that specifically require the use of the word "negligence" in an exculpatory agreement if such an agreement is to be effective to shield a party from a claim based on negligent conduct. *See* maj. op. at 784–785. Although there is language in the court of appeals' opinion that is supportive of that reading, I read the opinion to be based on a careful consideration of the particular language of the release agreement in the present case and not solely on the absence of the word "negligence" in the language of the release. *See Simkin,* 765 P.2d at 584.