**Binnie BAUER, Plaintiff,**

v.

**ASPEN HIGHLANDS SKIING CORPORATION, a Delaware corporation, and Marker U.S.A., a foreign corporation, Defendants.**

Civ. A. No. 91–B–1859.

United States District Court, D. Colorado.

April 9, 1992.

H. Craig Skinner, Denver, Colo., for plaintiff.

Peter W. Rietz, White & Steele, P.C., Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Defendants move for summary judgment contending that there is no dispute of material fact and that they are entitled to judgment as a matter of law. The issues are adequately briefed and oral argument will not materially aid their resolution. I hold that plaintiff entered into a valid exculpatory contract that encompasses her three claims for relief. Accordingly, defendants' motion is granted.

The facts are undisputed. Plaintiff is a travel agent residing in New York. In connection with employment, plaintiff arranged for a free ski pass and lessons from Aspen Highlands in exchange for her promise to promote a certain Aspen Highlands package to her clients in New York and Connecticut. On March 11, 1990, plaintiff enrolled in the Aspen Highlands Ski School and rented ski equipment, which included bindings purportedly manufactured by Marker U.S.A. Plaintiff participated in the ski school for the next four days. She alleges that her bindings did not open on four occasions. Then, on March 15, plaintiff fell while skiing down a slope rated "easy", breaking her leg. Plaintiff alleges that her bindings did not release during this fall.

As part of the rental transaction, plaintiff read, initialed, and signed a rental release agreement, which states in relevant part:

I understand and am aware that skiing is a hazardous activity, involving INHERENT AND OTHER RISK of injury to any and all parts of the body. I further understand that injuries in the sport of skiing are a COMMON AND ORDINARY OCCURRENCE and I freely accept and assume those risks.
(Please initial __) [plaintiff/s/]
I understand that the ski-boot-binding system being furnished CANNOT RELEASE to prevent injury at all times or under all circumstances, that it is not possible to predict every situation in which it will or will not release, and that its use CANNOT GUARANTEE my safety or freedom from injury when I participate in the sport of snow skiing.
(Please initial __) [plaintiff/s/]
I agree and understand that this ski-boot-binding system may not necessarily reduce NOR ELIMINATE THE RISK of injuries to the lower portion of this user's legs, to this user's knees or any other parts of this user's body.
I hereby RELEASE the ski shop and its owners, agents, and employees, Marker and its owners, agents, and employees from any and all liability for injuries or damages to the user of equipment listed on this form, or to any other person, resulting from NEGLIGENCE, the selection, installation, maintenance, adjustment, and use of this equipment. In addition, they shall not be held liable for any consequential damages. I agree NOT to make a claim against or sue this ski shop or Marker for injuries or damages relating to skiing and/or use of this equipment.
(Please initial __) [plaintiff/s/]
I have carefully read this agreement and fully understand the release of liability provisions it contains. I am aware that this is a release of liability and a contract between myself, this ski shop, and Marker and I sign it of my own free will.
Signature _____ [plaintiff/s/] Date 3/11

Plaintiff brings three claims for relief: negligence against Aspen Highlands, negligence against Marker, and strict products liability against Marker. Defendants move for summary judgment arguing that the release agreement signed by plaintiff bars this action. Marker also argues that it cannot be liable under strict products liability under C.R.S. § 13–21–402.

Fed.R.Civ.P. 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a

# 474

matter of law. Here, the material facts are not in dispute and defendants' motion can be resolved as a matter of law.

This is a diversity action. Thus, resolution of this motion turns on Colorado law.

■ The determination of the sufficiency and validity of an exculpatory agreement is a question of law for the court. *Jones v. Dressel,* 623 P.2d 370, 376 (Colo. 1981). Likewise, the determination of whether a contract is an adhesion contract is a question of law for the court. *Id.* at 374.

Exculpatory agreements have long been disfavored. *Heil Valley Ranch, Inc. v. Simkin,* 784 P.2d 781, 783 (Colo.1989). They stand at the crossroads of two competing principles: freedom of contract and responsibility for damages caused by one's own negligent acts. *Id.* at 784. Exculpatory agreements are strictly construed but are not necessarily void "as long as one party is not at such obvious disadvantage in bargaining power that the effect of the contract is to put him at the mercy of the other's negligence." *Id.* Thus, exculpatory agreements between employer and employee and between common carriers or public utilities and members of the public are generally held invalid. *Id.*

■ In determining the validity of an exculpatory contract, Colorado looks to four factors: (1) the existence of a duty to the public; (2) the nature of the service performed; (3) whether the contract was fairly entered into; and, (4) whether the intention of the parties is expressed in clear and unambiguous language. *Jones,* 623 P.2d at 376. In this action, plaintiff argues that the release fails to meet the first and third factors. I disagree.

■ In *Jones,* the court made it clear that, for an exculpatory agreement to fail under the first factor, the party seeking exculpation must be engaged in providing a service of great importance to the public, which is often a matter of practical necessity to some members of the public. *Id.* at 376–77. It is the essential nature of the service that gives the party seeking exculpation an unfair bargaining advantage and

results in the contract running afoul of public policy.

The service here is recreational. Although skiing is a recreational activity enjoyed by many, by definition and common sense, it is neither a matter of great public importance nor a matter of practical necessity. Therefore, there is no public duty that prevents enforcement of this agreement.

Nonetheless, plaintiff argues that familiarization—"fam"—tours such as hers are essential to a travel agent's business because they provide an effective way for travel agents to market trips. Relying on *Walton v. Fujita Tourist Enterprises Co.,* 380 N.W.2d 198 (Minn.App.1986), plaintiff contends that the services provided by defendants were "a necessity for the success of her travel agent business." While this may or may not be true, free skiing for travel agents does not rise to the level of essential service contemplated by Colorado law.

Plaintiff further attempts to translate this purported business necessity into a matter of "public interest" by arguing that these "fam" tours could "affect hundreds or thousands of travelers coming from the East Coast to Aspen." Again, however, these "fam" tours are not "essential" under the *Jones* rule and easing east coast travel to Aspen is not the "public interest" contemplated by the rule of that case.

Plaintiff also contends that the third factor is not satisfied here. In effect, she argues that this is an adhesion contract because she had no choice but to sign the release. She asserts that all other ski rental shops in Aspen require a similar release. She also argues that, because "fam" trips are essential to travel agents, she was at a bargaining disadvantage and had no option but to sign the release. These contentions have no merit.

■ Colorado defines an adhesion contract as "generally not bargained for, but imposed on the public for a necessary service on a take it or leave it basis." *Jones,* 623 P.2d at 374. However, printed form contracts offered on a take it or leave it

basis, alone, do not render the agreement an adhesion contract. *Clinic Masters v. District Court*, 192 Colo. 120, 556 P.2d 473 (1976). Rather, "[t]here must a showing that the parties were greatly disparate in bargaining power, that there was no opportunity for negotiation, or that [the] services could not be obtained elsewhere." *Id.* In *Jones*, the court held that the agreement was not an adhesion contract and the party seeking exculpation did not possess a decisive bargaining advantage "because the service provided by Free Flight was not an essential service." *Jones*, 623 P.2d at 377–78.

■ Here, defendants' recreational services were not essential and, therefore, they did not enjoy an unfair bargaining advantage. Nor does it matter that all ski rental shops in Aspen required the same release. Plaintiff could choose not to rent this equipment. And, in any event, plaintiff could have satisfied her business interest by absorbing the ambiance of Aspen without skiing. Therefore, I conclude that the exculpatory agreement was fairly entered into and is not an adhesion contract.

Because plaintiff does not contest that the agreement, if valid, encompasses her three claims for relief, defendants' motion for summary judgment is granted. The agreement is valid and, thus, I need not consider defendants' alternative argument that C.R.S. § 13–21–402 bars plaintiff's products liability claim against Marker.

Accordingly, IT IS ORDERED THAT:

(1) Defendants' motion for summary judgment is GRANTED;

(2) Final judgment shall enter in favor of defendants and against plaintiff; and,

(3) Defendants shall have their costs.