The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
November 6, 2025

## 2025COA87

**No. 24CA2075, *Shive v. 24 Hour Fitness* — Contracts — Colorado Premises Liability Act — Exculpatory Clauses — Clear and Unambiguous Intent to Extinguish Liability**

A division of the court of appeals concludes that the references to "facilities" in the exculpatory clause of a health club membership agreement do not express the parties' intention to extinguish the club's liability for claims arising from a member's slip and fall on an icy, publicly accessible sidewalk near the entrance to one of the club's buildings. For this reason, the division reverses the district court's grant of summary judgment to the club on the injured club member's Premises Liability Act claim.

Court of Appeals No. 24CA2075
City and County of Denver District Court No. 23CV33224
Honorable J. Eric Elliff, Judge

_____

Matthew Shive,

Plaintiff-Appellant,

v.

24 Hour Fitness USA, LLC,

Defendant-Appellee.

_____

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE LIPINSKY
Román, C.J., and Kuhn, J., concur

Announced November 6, 2025

_____

Robinson & Henry, P.C., Matthew W. Hamblin, Jon M. Topolewski, Denver, Colorado, for Plaintiff-Appellant

Dietze and Davis, P.C., William A. Rogers, III, Nathan A. Klotz, Christina M. Gonsalves, Lauren N. Davis, Boulder, Colorado, for Defendant-Appellee

Dormer Harpring, Timothy M. Garvey, Denver, Colorado; Sliger Law Firm, Amber Sliger, Colorado Springs, Colorado, for Amicus Curiae Colorado Trial Lawyers Association

¶ 1    Through exculpatory agreements, parties may seek to insulate themselves from liability arising from their negligent acts.  *See Miller v. Crested Butte, LLC*, 2024 CO 30, ¶ 45, 549 P.3d 228, 237. Exculpatory agreements implicate "two competing principles: freedom of contract and responsibility for damages caused by one's own negligent acts."  *Heil Valley Ranch, Inc. v. Simkin*, 784 P.2d 781, 784 (Colo. 1989).

¶ 2    Although "exculpatory agreements have long been disfavored," *B & B Livery, Inc. v. Riehl*, 960 P.2d 134, 136 (Colo. 1998), and courts closely scrutinize them, *Miller*, ¶ 45, 549 P.3d at 237, they are generally enforceable if they clearly and unambiguously reflect the parties' intent to "extinguish liability," *Heil Valley Ranch*, 784 P.2d at 785.  Courts recognize that competent parties, including companies that provide services to consumers, have a contractual right to limit their liability and to allocate business risks in accordance with their business judgment.  *See Taylor v. Brooklyn Boulders, LLC*, 2025 IL App (1st) 231912, ¶ 20, 265 N.E.3d 407, 415; *see also Core-Mark Midcontinent, Inc. v. Sonitrol Corp.*, 2012 COA 120, ¶ 13, 300 P.3d 963, 968 ("A limitation of liability provision is generally enforceable because it represents the parties'

1

bargained-for agreement regarding allocation of risks and costs in the event of a breach or other failure of the contemplated transaction.").

¶ 3　This appeal examines the limits of when an exculpatory agreement "clearly and unambiguously" expresses "the intent of the parties . . . to extinguish liability" in the context of an athletic club membership agreement. *Heil Valley Ranch*, 784 P.2d at 785. We specifically consider whether references to "facilities" in such a clause bar a club member's claim under the Premises Liability Act (PLA), § 13-21-115, C.R.S. 2025, for damages resulting from the member's slip and fall on an icy sidewalk near the athletic club's entrance.

¶ 4　Plaintiff, Matthew Shive, appeals the district court's grant of summary judgment in favor of defendant, 24 Hour Fitness USA, LLC, on Shive's PLA claim. We reverse.

## I.　Background

### A.　Facts

¶ 5　Shive obtained the right to use 24 Hour's athletic clubs by signing a preprinted membership agreement containing an exculpatory clause. The clause says the following:

Using [24 Hour's] facilities involves the risk of injury to you or your guest, whether you or someone else causes it. Specific risks vary from one activity to another and the risks range from minor injuries to major injuries, such as catastrophic injuries including death. **In consideration of your use of 24 Hour's facilities and/or participation in the activities offered by 24 Hour, <u>you understand and voluntarily accept this risk and agree that 24 Hour</u>, its officers, directors, employees, volunteers, agents and independent contractors <u>will not be liable for any injury</u>, or any other damages, to you, your spouse, guests, unborn child, or relatives resulting from the actions or inactions, including negligence, of 24 Hour or anyone on 24 Hour's behalf or anyone using the facilities, including, without limitation, personal, bodily, or mental injury, or economic loss, <u>whether said use or said injury is related to exercise or not</u>. This Release of Liability includes, without limitation, claims against 24 Hour for negligence, premises liability, and products liability.** Further, you understand and acknowledge that 24 Hour does not manufacture fitness or other equipment at its facilities, but purchases and/or leases equipment. You understand and acknowledge that 24 Hour is providing recreational services and may not be held liable for defective products.

¶ 6   Shive walked out of the club building after working out on a winter day. Snow and ice had built up on the sidewalk in front of the building. Shive slipped and fell on ice that had accumulated

beneath an awning that extended over the sidewalk near the building's front entrance.  The fall resulted in a significant injury to Shive's knee.

B.    Procedural History

¶ 7      Shive filed a PLA suit against 24 Hour premised on his allegation that 24 Hour "unreasonably failed to exercise reasonable care to protect against dangers and/or dangerous activities, of which [it] actually knew or should have known by failing to remove, remediate, mitigate and/or properly maintain the dangerous area/condition."  Shive asserted that 24 Hour had unreasonably failed to exercise reasonable care by not removing the accumulated ice near the building's entrance.

¶ 8      24 Hour filed a summary judgment motion in which it argued that the exculpatory clause in Shive's membership agreement barred his PLA claim.  Shive responded that the exculpatory clause "cannot be reasonably interpreted to encompass the risk that [Shive] succumbed to and the location of [his] injury — a fall on ice outside of the building on an exterior sidewalk as he was leaving the [club]."  He asserted that, "[w]hen read as a whole, [24 Hour]'s chosen language for its exculpatory provision would suggest a

4

member would be waiving claims based on the inherent risks posed by the use of a gym or fitness club and the activities one may participate in at such a facility." For this reason, Shive said, "the potential member reviewing this language would at least conclude that this provision was limited to the *use of* or *activities within* the building of the facility."

¶ 9 The court granted summary judgment to 24 Hour after considering the supreme court's four-factor test for assessing the validity of exculpatory agreements. *See Jones v. Dressel*, 623 P.2d 370, 376 (Colo. 1981). Because Shive did not contest the first three *Jones* factors, the court focused on the fourth *Jones* factor — "whether the intention of the parties" to "insulate a party from liability from his own negligence" was expressed in "clear and unambiguous language." *Id.*

¶ 10 The court concluded that the exculpatory clause in Shive's membership agreement was "clear, broad[,] and mostly free of legalese," and it found that, through the clause, Shive released 24 Hour from "liability for all injuries, regardless of whether the injury was related to exercise." The court said that, because "entry and exit of the club is a necessary adjutant [sic] to its use," Shive was

5

injured while "participating in the activities described in the contract." The court noted that the exculpatory clause "specifically includes a waiver of [PLA] claims," including claims arising from "non-exercise related activity," and, therefore, the clause "necessarily encompasses injuries incurred in entering or leaving the club." Accordingly, the court concluded that Shive had "released and waived" his PLA claim, and it dismissed the claim with prejudice.

¶ 11    On appeal, Shive contends that the court erred by (1) determining that the exculpatory clause was valid under the fourth *Jones* factor; (2) failing to consider the evidence in the light most favorable to him; and (3) concluding that the exculpatory clause was valid as a matter of public policy.

## II.    Analysis

### A.    The Exculpatory Clause Does Not Bar Shive's PLA Claim

¶ 12    Shive contends that the court erred in its analysis of the fourth *Jones* factor. We agree.

#### 1.    Standard of Review

¶ 13    "We review de novo an order granting a motion for summary judgment." *Gagne v. Gagne*, 2014 COA 127, ¶ 24, 338 P.3d 1152,

1159.  Likewise, "[t]he interpretation of a contract is a question of law" that we review de novo.  *Fed. Deposit Ins. Corp. v. Fisher*, 2013 CO 5, ¶ 9, 292 P.3d 934, 937 (citing *Ad Two, Inc. v. City & County of Denver*, 9 P.3d 373, 376 (Colo. 2000)).  For this reason, "[t]he determination of the sufficiency and validity of an exculpatory agreement is a question of law for the court to determine."  *Jones*, 623 P.2d at 376.

### 2.  The Case Law Governing the Enforceability of Exculpatory Clauses

¶ 14    In *Jones*, the supreme court identified four factors that courts must consider when determining the validity of an exculpatory clause: "(1) the existence of a duty to the public; (2) the nature of the service performed; (3) whether the contract was fairly entered into; and (4) whether the intention of the parties is expressed in clear and unambiguous language."  *Id.*  As noted above, this appeal focuses on the fourth *Jones* factor.

¶ 15    In determining whether an exculpatory clause is valid under the fourth *Jones* factor, "[t]he question is not whether a detailed textual analysis would lead a court to determine that the language, even if ambiguous, would ultimately bar the plaintiff's claims."  *Doe*

7

*v. Wellbridge Club Mgmt. LLC*, 2022 COA 137, ¶ 16, 525 P.3d 682, 686.  Instead, a court must examine "the actual language of the agreement for legal jargon, length[,]. . . complication, and any likelihood of confusion or failure of a party to recognize the full extent of the release provisions."  *Chadwick v. Colt Ross Outfitters, Inc.*, 100 P.3d 465, 467 (Colo. 2004).

¶ 16    The parties primarily rest their arguments regarding the validity of the exculpatory clause on three recent cases.  Shive cites *Doe* and *Stone v. Life Time Fitness, Inc.*, 2016 COA 189M, 411 P.3d 225, to support his contention that the court erred by granting summary judgment to 24 Hour.  In contrast, 24 Hour cites *Miller* — the supreme court's most recent pronouncement on the enforceability of releases of liability in negligence claims — to argue that the exculpatory clause bars Shive's PLA claim.  We next turn to these cases.

¶ 17    In *Miller*, the supreme court considered whether a father's execution of a release of liability barred the negligence per se and common law negligence claims he brought against a ski resort on behalf of his injured minor daughter.  *Miller*, ¶¶ 1-3, 549 P.3d at 230-31.  Because, unlike Shive's PLA claim, the father's negligence

8

per se claim rested on the ski resort's alleged violation of its statutory and regulatory duties, *id.* at ¶ 2, 549 P.3d at 230-31, we focus on the *Miller* court's analysis of the release's effect on the father's common law negligence claim.

¶ 18   The father signed the release of liability on behalf of his daughter when he purchased ski passes for both of them. *Id.* at ¶ 7, 549 P.3d at 231. The release said that individuals participating in the defined activities assumed, among other risks, "the risk of 'using the lifts' and of 'misloading, entanglements, or falls from ski lifts and the negligence of ski area employees.'" *Id.* at ¶ 53, 549 P.3d at 238.

¶ 19   The plaintiff's daughter was unable to get seated on a chair lift. *Id.* at ¶ 9, 549 P.3d at 232. The lift ascended while the girl was hanging from the chair. *Id.* The father alleged that no lift attendant or operator present could slow or stop the lift. *Id.* The girl fell approximately thirty feet from the lift and was seriously injured. *Id.* The fall left her a quadriplegic. *Id.* at ¶ 10, 549 P.3d at 232.

¶ 20   Her father argued on appeal that the release was "not specific enough to capture the precise scenario at issue," *id.* at ¶ 48, 549 P.3d at 237, because "no experienced skier would have anticipated

9

that the releases were intended to cover the specific facts in this case," *id.* at ¶ 51, 549 P.3d at 238.

¶ 21　The supreme court disagreed with the father's contention that the release was not specific enough to bar his common law negligence claim. *Id.* at ¶¶ 51-52, 549 P.3d at 238. It concluded that the release language specifying that the pass holder assumes the risk of "'using the lifts' and of 'misloading, entanglements, or falls from ski lifts and the negligence of ski area employees'" sufficiently informed the father of "the types of risks that led to [his daughter]'s injuries." *Id.* at ¶¶ 48, 53, 549 P.3d at 237-38. Because the release language "expressed the parties' intentions in clear and unambiguous language," it "satisfied the fourth *Jones* factor" and was enforceable. *Id.* at ¶ 53, 549 P.3d at 238.

¶ 22　In *Stone*, the division held that a release in an athletic club membership agreement did not bar the PLA claim of a member who tripped on a hair dryer cord in the club's locker room after washing her hands. *Stone*, ¶ 1, 411 P.3d at 227. In its analysis of the fourth *Jones* factor, the division noted that the first sentence of the release said, "I understand that there is an inherent risk of injury . . . in the use of or presence at [the defendant's athletic center], the

10

use of equipment and services at [the defendant's athletic center], and participation in [the defendant's] programs." *Id.* at ¶ 27, 411 P.3d at 230. The next sentence provided that such inherent risk included, but was not limited to, "'[i]njuries arising from the use of [the defendant's] centers or equipment' and from activities and programs sponsored by [the defendant]." *Id.*

¶ 23 The division said that the "focus on the use of exercise equipment and facilities and physical injuries resulting from strenuous exercise" in the release would lead a person to "reasonably conclude that by signing the [a]greement he or she was waiving claims based only on the inherent risks of injury related to fitness activities." *Id.* at ¶ 30, 411 P.3d at 231. Accordingly, the division concluded that the release did not "clearly, unambiguously, and unequivocally bar [the plaintiff]'s PLA claim based on the injuries she allege[d] she sustained after she washed her hands in the women's locker room." *Id.* at ¶ 35, 411 P.3d at 232.

¶ 24 The division in *Doe* also determined that an exculpatory clause in an athletic club's membership agreement did not bar the plaintiffs' claims. In that case, the division held that the clause did not bar a mother and daughter's claims arising from an athletic

club employee's sexual abuse of the daughter when she was a minor. *Doe*, ¶ 1, 525 P.3d at 684. As in *Stone,* the exculpatory clause at issue began by "acknowledging that 'athletic activities and the use of the [defendant's athletic club] may result in personal injuries, including serious bodily injury or death.'" *Id.* at ¶ 17, 525 P.3d at 686.

¶ 25    The division reasoned that the exculpatory clause did not bar the plaintiffs' claims because it did not "express the parties' intention to waive [sexual abuse] claims in clear, unambiguous, and unequivocal language." *Id.* at ¶ 15, 525 P.3d at 686. Rather, the provision had a "dominant focus" on "the risks of athletic activities associated with the use of the [defendant athletic club]'s facilities." *Id.* at ¶ 18, 525 P.3d at 686 (quoting *Stone,* ¶ 27, 411 P.3d at 230). Accordingly, the *Doe* division concluded that the exculpatory clause "created a substantial likelihood that a reader would fail to recognize the full extent of the release provision" — specifically, that it "could apply to the risk of [the defendant's] employee's sexual abuse of a [c]lub member due, in part, to the [defendant]'s alleged negligence or failure to exercise reasonable care." *Id.* at ¶ 28, 525 P.3d at 688.

¶ 26    24 Hour asserts that *Miller* superseded *Stone* and *Doe.* We disagree.

¶ 27    Not only did *Miller* not cite *Stone* or *Doe,* but nothing in the *Miller* court's analysis conflicted with the holdings in *Stone* or *Doe.* Rather, in determining whether the subject release was enforceable, the supreme court examined "whether the intent of the parties was to extinguish liability" as it related to the father's claims and "whether this intent was clearly and unambiguously expressed." *Miller,* ¶ 52, 549 P.3d at 238 (quoting *Heil Valley Ranch,* 784 P.2d at 785).  In concluding that "it was reasonable to interpret the broad language in the release" at issue to bar the father's common law negligence claim, the court focused on the release language addressing causes of potential accidents similar to the daughter's fall from the ski lift: the release "expressly stated that the pass holder assumes the risk of 'using the lifts' and of 'misloading, entanglements, or *falls from ski lifts* and the negligence of ski area employees.'"  *Id.* at ¶¶ 52-53, 549 P.3d at 238 (emphasis added).

¶ 28    Because the *Miller* court reviewed the subject release by scrutinizing whether the liability waiver language clearly and unambiguously expressed the parties' intentions to waive injuries

13

caused by "fall[ing] from [a] ski lift[]," *id.* — the very activity that caused the daughter's injuries — the supreme court's review of the release at issue was consistent with the analyses in *Stone* and *Doe*. *See Stone*, ¶ 35, 411 P.3d at 232 (holding that the assumption of risk did not "clearly, unambiguously, and unequivocally bar [the plaintiff]'s PLA claim"); *Doe*, ¶ 15, 525 P.3d at 686 (concluding that the exculpatory language did not bar the plaintiff's claims because it did not "express the parties' intention to waive [sexual abuse] claims in clear, unambiguous, and unequivocal language").

¶ 29 Given that *Stone* and *Doe* are consistent with *Miller*, we next consider the reasoning in those cases to determine whether the exculpatory clause in Shive's membership agreement bars his PLA claim.

¶ 30 (To support its argument that the exculpatory clause "expressed the intention of the parties in a clear and unambiguous fashion," 24 Hour cites three state district court decisions. But those decisions neither bind us nor are they persuasive authority in support of 24 Hour's argument. *See Sidman v. Sidman*, 2016 COA 44, ¶ 10, 411 P.3d 167, 169. Further, the facts and arguments in those cases were materially different from the facts underlying

14

Shive's PLA claim. *See Bruschi v. 24 Hour Fitness USA, LLC*, No. 24CV227 (Colo. Dist. Ct., Arapahoe Cnty. Apr. 28, 2025) (unpublished order) (noting that the plaintiff had fallen while inside the building housing the athletic club); *Meister v. 24 Hour Fitness Holdings, LLC*, No. 16CV33860 (Colo. Dist. Ct., City & Cnty. of Denv. Apr. 4, 2017) (unpublished order) (analyzing the plaintiff's argument that the release of liability was not in effect on the day of the plaintiff's injury); *Fain v. 24 Hour Fitness USA, Inc.*, No. 12CV460 (Colo. Dist. Ct., Boulder Cnty. Jan. 7, 2013) (unpublished order) (finding that the plaintiff was injured while exercising).)

### 3. The Exculpatory Clause in Shive's Membership Agreement Does Not Clearly and Unambiguously Bar His PLA Claim

¶ 31 We next apply the case law discussed above to the central issue in this appeal — whether a 24 Hour member could "reasonably conclude" that, by signing a membership agreement containing the exculpatory clause, the member was waiving claims not necessarily based "on the inherent risks of injury related to fitness activities." *Stone*, ¶ 30, 411 P.3d at 231. Thus, to determine the enforceability of the exculpatory clause, we must decide whether, by signing the membership agreement, 24 Hour and Shive

15

intended "to extinguish liability" on claims such as Shive's PLA claim and whether the exculpatory clause "clearly, unambiguously, and unequivocally expressed" that intent. *Doe*, ¶ 22, 525 P.3d at 687; *see Stone*, ¶ 35, 411 P.3d at 232.

¶ 32 Shive contends that the references to "facilities" in the exculpatory clause must be limited to the "actual building" in which 24 Hour members recreate and do not encompass any physical space outside the building. 24 Hour disagrees, asserting that the exculpatory clause "unequivocally expresses the intent of the parties to release [24 Hour] from liability for injuries that occur *on its property*, regardless of the mechanism or location." Further, it argues that, because the exculpatory clause expressly covers injuries regardless of "whether said use or said injury is related to exercise or not," and a member waives "without limitation, claims against 24 Hour for negligence, premises liability, and products liability," Shive's PLA claim "arising out of [a] slip and fall" was "contemplated by the clear language" of the exculpatory clause.

¶ 33 The first two sentences of the exculpatory clause say that "*[u]sing [24 Hour's] facilities* involves the risk of injury" and that those "[s]pecific risks vary from one activity to another" and "range

16

from minor injuries to major injuries, such as catastrophic injuries including death." Following those sentences, the clause says that, "[i]n consideration of [a member's] *use of 24 Hour's facilities and/or participation in the activities offered by 24 Hour*," the member "understand[s] and voluntarily accept[s] *this risk . . .* whether said use or said injury is related to exercise or not."

¶ 34 The terms "this risk" and "said injury" must be read together with the "risk of injury" described in the clause's first sentence — the risk of injury inherent in "[u]sing [24 Hour's] facilities." Similarly, "said use" means "use of 24 Hour's facilities and/or participation in the activities offered by 24 Hour." Because "said injury" refers to injuries sustained while "[u]sing [24 Hour's] facilities" and "said use" refers to the "use of 24 Hour's facilities," the exculpatory clause's plain language limits the phrase "whether said use or said injury is related to exercise or not" to those injuries sustained while "[u]sing [24 Hour's] facilities."

¶ 35 And significantly, the exculpatory clause concludes with the statement that "24 Hour is providing recreational services," which makes clear that members use 24 Hour's facilities for this type of activity. In light of the reference to 24 Hour's provision of

17

"recreational services" in the ultimate sentence of the exculpatory clause, "one could reasonably conclude that by signing" the membership agreement, the member "was waiving claims based only on the inherent risks of injury" related to "recreational services," as opposed to claims arising from the risk of walking on an icy sidewalk outside the club building. *Stone*, ¶ 30, 411 P.3d at 231.

¶ 36 The exculpatory clause's description of "risk of injury" and reference to "recreational services" unambiguously waive liability for injuries sustained while "[u]sing [24 Hour's] facilities" to participate in "recreational services." Thus, a member would likely recognize that the member was waiving claims arising from injuries sustained during the "use of 24 Hour's facilities and/or participation in the activities offered by 24 Hour." Further, the member would understand that this waiver applied regardless of "whether said use or said injury [was] related to exercise or not." *See id.*

¶ 37 We next turn to the scope of the word "facilities" as it appears in the exculpatory clause.

¶ 38 The clause says that "24 Hour does not manufacture fitness or other equipment at its facilities," indicating that "facilities" means a

physical space.  We also consider the references to "facilities" in section 4(a) of the membership agreement's "facilities and services" clause: a 24 Hour membership "shall include access to the facility or facilities as shown and limited by the Membership Type." Section 4(c) of the facilities and services clause says that "24 Hour regularly closes its facilities, or portions of its facilities."  And the "membership" section of the membership agreement says that a membership permits the member to "use 24 Hour's premises, facilities, equipment[,] and services."  Thus, this portion of the membership agreement tells us that "facilities" means a physical space that only members can access to use 24 Hour's "recreational services."

¶ 39    The sidewalk on which Shive fell was not restricted to members' use; nonmembers could also access and walk on it. Accordingly, when Shive fell, he was not using 24 Hour's "facilities" — its limited-access space where members, but not nonmembers, could engage in its "recreational services" — as a member would reasonably understand the term based on the language of the membership agreement.

¶ 40    24 Hour asserts that the location of Shive's fall is immaterial to our analysis.  We disagree because the exculpatory clause only bars Shive's PLA claim if it clearly and unambiguously expresses the parties' intention to waive liability for injuries sustained on a sidewalk outside the club building.  *See Jones*, 623 P.2d at 378 (concluding that an exculpatory clause "expressed the parties' intention in clear and unambiguous language" to waive the plaintiff's claim for personal injuries sustained in an airplane crash because such clause "specifically included injuries sustained 'while upon [a corporation's] aircraft'"); *Chadwick*, 100 P.3d at 468 (determining that an exculpatory clause expressed a clear intent to release a corporation that guided the plaintiff on a hunting expedition from "'any' liability for injuries 'caused by or resulting from' [the plaintiff]'s 'participation' in the contracted-for hunting expedition," and holding that the clause barred the plaintiff's personal injury claim because the plaintiff was injured when thrown from a mule during the guided hunting expedition).

¶ 41    Shive reasonably understood the membership agreement to waive liability for claims arising from the use of 24 Hour's exercise facilities, such as the use of gym equipment, swimming pools,

sports fields, and basketball courts, and non-exercise facilities, such as steam rooms, saunas, and locker rooms.  But the term "facilities" in the exculpatory clause does not clearly and unambiguously cover a publicly accessible sidewalk outside 24 Hour's building, on which it does not provide "recreational services."  Therefore, the exculpatory clause does not clearly and unambiguously bar Shive's PLA claim.

¶ 42    24 Hour contends that Shive's argument is based on "linguistic gymnastics."  It argues that the exculpatory clause is not limited in scope to injuries sustained while "[u]sing [24 Hour's] facilities."  In support of its position, 24 Hour cites the clause's language barring claims against 24 Hour for negligence, *premises liability*, and products liability.  It argues that a slip and fall like the one that caused Shive's injury is the "quintessential example" of a PLA claim that the exculpatory clause prohibits.

¶ 43    We agree with 24 Hour that the exculpatory clause waives liability for claims arising from a slip and fall that occurred within its "facilities" — the recreational spaces located inside its building, such as a gym floor, a basketball court, a pool deck, or a wet locker room floor.  But the mere reference to "premises liability" in the

21

exculpatory clause does not overcome the clause's clear limiting language or expand its scope to cover claims arising from injuries sustained outside the club building.

¶ 44    In addition, 24 Hour correctly points out that the exculpatory clause is only 9 lines long, consists of 227 words, and appears in a legible typeface that includes emphasized language.  Further, we agree with 24 Hour that the clause is not buried among other provisions of the membership agreement.  While we agree that the text of the exculpatory clause is readable, *see Chadwick*, 100 P.3d at 467, we cannot ignore its plain language, *see Doe*, ¶¶ 19-20, 525 P.3d at 687.

¶ 45    For these reasons, we conclude that the exculpatory clause does not express an intention of Shive and 24 Hour to waive 24 Hour's liability for risks outside the club building "in clear and unambiguous language."  *Jones*, 623 P.2d at 376.  Indeed, the clause indicates a "likelihood" that Shive understood that the "full extent of the release provisions" covered claims for injuries arising from his "use of 24 Hour's facilities" — the physical spaces in which 24 Hour provides recreational services — and not injuries arising

from his use of a sidewalk outside 24 Hour's building. *Chadwick*, 100 P.3d at 467.

¶ 46 The exculpatory clause is unenforceable to bar Shive's PLA claim under the fourth *Jones* factor because it does not express "in clear and unambiguous language" that Shive and 24 Hour intended to waive 24 Hour's liability for Shive's PLA claim. *Jones*, 623 P.2d at 376; *Miller*, ¶ 53, 549 P.3d at 238. Accordingly, we reverse the court's grant of summary judgment to 24 Hour.

## B. Shive's Remaining Arguments

¶ 47 In light of our disposition of Shive's argument based on the fourth *Jones* factor, we need not decide whether the court failed to consider the evidence in the light most favorable to Shive or whether the exculpatory clause in Shive's membership agreement is invalid as a matter of public policy.

## III. Disposition

¶ 48 The judgment is reversed, and the case is remanded to the district court for further proceedings consistent with this opinion.

CHIEF JUDGE ROMÁN and JUDGE KUHN concur.