**Debra K. ANDERSON, Plaintiff–Appellant,**

v.

**William R. EBY; Cheri Eby; Jane Doe, whose true name is unknown; Wilderness Adventures, Ltd., a suspended corporation doing business as Mountain Meadow Tours, Ltd., doing business as Lost Lake Lodge and Resort, Ltd., doing business as Rendezvous Outfitters and Guides, Ltd., Defendants–Appellees.**

**No. 91–1291.**

United States Court of Appeals, Tenth Circuit.

July 9, 1993.

---

Norman R. Mueller of Haddon, Morgan & Foreman, P.C., Denver, CO (Jim Levanthal of Leventhal & Bogue, P.C., with him on the briefs), for plaintiff-appellant.

Christina M. Habas of Watson, Nathan & Bremer, P.C., Denver, CO, for defendants-appellees.

Before McKAY, Chief Judge, SETH and BRORBY, Circuit Judges.

McKAY, Chief Judge.

During a snowmobile trip organized by Defendants in Crested Butte, Colorado, in February 1990, Plaintiff's snowmobile crashed, and she suffered major injuries. She brought this diversity action, claiming that the crash resulted from Defendants' negligence.

Defendants moved for summary judgment, claiming that a release Plaintiff signed absolved them of any liability for their alleged negligence. The release stated, in pertinent part:

## RELEASE AND INDEMNITY AGREEMENT

. . . .

IN CONSIDERATION OF being permitted to rent a snowmobile and thereafter participate in a snowmobile tour, skiing tour or snow cat tour or other tour conducted by Mountain Meadow Tours, Ltd., Releasor, for himself, his spouse, legal representatives, heirs and assigns, hereby releases, waives and discharges WILLIAM R. EBY, CHERI EBY, WILDERNESS VENTURES, LTD., MOUNTAIN MEADOW TOURS, LTD., AND LOST LAKE LODGE LTD., its officers, directors, agents, shareholders and employees, and each of them, hereinafter referred to as

"Releasees", from all liability to the undersigned, his spouse, legal representatives, heirs and assigns, for any and all loss, personal injury or damage, and any claim or damages resulting therefrom, on account of injury to Releasor's person or property, whether caused by the negligence of Releasees or otherwise while the Releasor is participating in the rental of snowmobiles or other equipment and participating in a snow tour or other activity of Releasees.

Releasor, by his signature, hereby assumes full responsibility for the risk of bodily injury, death or property damage while participating in snowmobile, snow cat, skiing or other type tours with Releasees.

. . . .

Releasor expressly agrees that this release, waiver and indemnity agreement is intended to be as broad and inclusive as permitted by the laws of the State of Colorado, and that any portion hereof is later found to be invalid or unenforceable [sic], it is agreed that the balance of this agreement shall, notwithstanding, continue in full legal force and effect.

(Appellant's App. at 29).

The district court granted summary judgment to Defendants on the basis of the agreement, and Plaintiff appeals.

### I

Plaintiff argues that the release is unclear and ambiguous, and, as such, is void under Colorado law. As proof of the confusing nature of the contract, Plaintiff cites deposition testimony of one Defendant and two employees of Defendants in which they express incorrect views on the scope of the release. She also claims that, as a novice in the sport, she lacked an adequate understanding of the risks involved for the nature of the release to be clear to her.

### A

Under Colorado law, "[a]greements attempting to exculpate a party from that party's own negligence have long been disfavored." *Heil Valley Ranch, Inc. v. Simkin,*

784 P.2d 781, 783 (Colo.1989). Nevertheless, they are not per se invalid, and will be upheld subject to the conditions the Supreme Court of Colorado outlined in *Jones v. Dressel,* 623 P.2d 370 (Colo.1981):

An exculpatory agreement, which attempts to insulate a party from liability from his own negligence, must be closely scrutinized, and in no event will such an agreement provide a shield against a claim for willful and wanton negligence. In determining whether an exculpatory agreement is valid, there are four factors which a court must consider: (1) the existence of a duty to the public; (2) the nature of the service performed; (3) whether the contract was fairly entered into; and (4) whether the intention of the parties is expressed in clear and unambiguous language.

*Id.* at 376 (citations omitted). The parties agree that only the fourth *Jones* factor is at issue in this appeal.

Initially, we must determine if the issue of ambiguity is one of law or of fact. While the Colorado courts have not specifically addressed this question in release cases, they have generally treated it as one of law. For example, in *Heil Valley* the Colorado Supreme Court did not defer in any way to the determination of the trial court relating to whether the waiver in that case was ambiguous. A look at more general principles of Colorado contract law confirms this view.

Whether a written instrument is inherently ambiguous is a question of law to be determined by the court. . . .

In ascertaining whether provisions of a written agreement are ambiguous, the instrument's language must be examined in accord with the plain and generally accepted meaning of the words used.

Extrinsic evidence and presumptive rules in aid of construction may be used only if the instrument itself is ambiguous, unclear, or uncertain as to the meaning the parties intended by it.

. . . .

[When] the agreement is clear, unequivocal, and unambiguous on its face[, it] must be enforced as written.

*Barnes v. Van Schaack Mortgage,* 787 P.2d 207, 209 (Colo.Ct.App.1990) (citations omitted).

▮ Viewing *Jones* in light of these principles of Colorado contract law clarifies the application of the fourth *Jones* factor. The requirement that waivers be unambiguous merely bars defendants from proving the existence of waivers by extrinsic evidence or presumptive aids of construction. If the plain language of the waiver is clear and unambiguous, it is enforced as a matter of law. If the plain language is unclear or ambiguous, it is void as a matter of law. Thus, under *Jones,* courts are not permitted to look beyond the plain language of the waiver.[1]

As such, we do not consider Plaintiff's citations to extrinsic evidence on various persons' understanding of the meaning of the contract. Similarly, Plaintiff's claim that her inexperience with snowmobiles prevented her from fully understanding the implications of the waiver is not relevant to our inquiry. Rather, we look only to the terms of the waiver itself.

### B

Plaintiff claims that the release is inherently confusing because the main paragraph consists of one sentence, almost 150 words long, which has many technical legal terms. Thus, she claims, it is void under *Jones.*

▮ Under Colorado law, those who draft releases face a difficult task. On the one hand, the releases must be clear and unambiguous or they are void per se. On the other hand, releases are disfavored and closely scrutinized, which requires their au-

thors to make their parameters explicit and detailed. Otherwise, they run the risk that the releases will be construed too narrowly.[2]

▮ Because Colorado courts construe them so narrowly, waivers often must contain exhaustive lists of items covered and/or terms of art to effectuate their purpose. We cannot agree with Plaintiff that the use of long series of legal terms, such as "the undersigned, his spouse, legal representatives, heirs and assigns," in and of themselves render the agreement unclear and ambiguous. *See Jones,* 623 P.2d at 372, 378 (upholding a waiver that included language such as "the Corporation, its owners, officers, agents, servants, employees and lessors"). Rather, they merely show an intent to draft a broad and valid waiver agreement.

▮ Stripped of the various commas and terms of art, the release says ". . . Releasor . . . hereby releases . . . Wilderness Ventures, Ltd. . . . from all liability . . . for any loss . . . on account of injury to Releasor's person . . ., whether caused by the negligence of Releasees or otherwise while the Releasor is participating in the rental of snowmobiles. . . ." (Appellant's App. at 29.) It would be difficult to draft a more plain statement of a waiver.

If the first paragraph left any confusion, it was clarified by the second, which states "Releasor, by his signature, hereby assumes full responsibility for the risk of bodily injury . . . while participating in snowmobile . . . tours with Releasees." (*Id.*) The intended breadth of the agreement was spelled out in a subsequent paragraph, which states, "Releasor expressly agrees that this release . . . is intended to be as broad and inclusive as

---

1. Indeed, such must be the case for waivers to carry out their intended function. Waivers are designed to reduce insurance costs, which requires in large part the elimination of the expense of trials. Were extrinsic evidence relevant in determining the validity of a waiver, there would always be disputed questions of fact surrounding these releases that would preclude summary judgment.

2. For example, in *Heil Valley,* the plaintiff had signed a waiver of "any claim [the plaintiff] might state against [the releasee] as a result of physical injury incurred." *Heil Valley,* 784 P.2d

at 782. Nevertheless, five of the ten appellate judges hearing the case (in both the Colorado Court of Appeals and in the Supreme Court of Colorado) concluded that the release did not bar all claims that the plaintiff's injuries resulted from the releasee's negligence.

*See id.* at 786–88 (Lohr, J., joined by two other Justices, dissenting); *Simkin v. Heil Valley,* 765 P.2d 582 (Colo.Ct.App.1988) (2–1), *rev'd,* 784 P.2d 781 (Colo.1990); *see also Jones,* 623 P.2d at 375, 378 (rejecting the plaintiff's argument that a release of liability for skydiving does not cover a plane crash prior to the jump).

permitted by the laws of the State of Colorado...." (*Id.*)

We conclude that the plain language of the contract clearly and unambiguously states an intent to release Defendants from claims for negligence.

## II

Plaintiff's alternative argument is that the Special Use Permit between the federal government and Defendants, which gave Defendants the right to conduct the tour across federal lands, prevents Defendants from enforcing the waiver.

## A

 Plaintiff primarily claims that because the waiver of liability is contrary to federal policy, the waiver is invalid under the Colorado doctrine that "[p]rivate parties may not by agreement or rule render ineffective rules and standards provided by statute." *In re K.M.K.*, 780 P.2d 43, 45 (Colo.Ct.App. 1989).

The difficulty in Plaintiff's argument lies in the lack of a clear policy expressed in federal statutes. While Plaintiff cites many cases in which Colorado courts have voided contracts that conflicted with laws, each of these cases referred to specific provisions of statutes. Plaintiff, however, does not cite any statute to support her argument.

Plaintiff places heavy emphasis on the terms of the Special Use Permit, which she contends embodies a policy that the waiver violates. In order to succeed in this argument, however, Plaintiff must show that the Permit is more than just a contract between private individuals and the government—she must show that it is a federal regulation with the force of law. Assuming that it is possible for a Special Use Permit to have the force of law, at a minimum such a situation can only occur if the Permit was adopted according to the procedures embodied in the Administrative Procedures Act. *See* 5 U.S.C. §§ 551(4), 553 (1988). The claimed regulation does not appear in the Code of Federal Regulations, where judicial notice of its enactment would be appropriate. Therefore, as the proponent of this claimed regulation, it was Plaintiff's burden to show its status as a regulation with the force of law. Because Plaintiff has presented no evidence suggesting that the procedures embodied in the APA were followed, she has failed to carry this burden. Absent such proof, the Special Use Permit is merely a contract between the government and private parties that does not have the force of law in collateral disputes.[3]

Plaintiff also cites the regulations adopted by the Secretary of Agriculture pursuant to 16 U.S.C. §§ 472, 551 (1988). These regulations do have the force of law. However, they are also extremely vague. The most specific regulation that Plaintiff cites is 36 C.F.R. § 251.56(a) (1992), which states that "[e]ach special use authorization shall contain ... (2) [s]uch terms and conditions as the authorized officer deems necessary to ... (iv) protect lives and property."

Plaintiff views this provision as expressing a firm federal policy against waivers of liability. We disagree. This provision is merely a delegation of authority to the local officers to require the conditions they deem necessary to protect the public. It expresses no view as to what conditions *are* necessary.

## B

Plaintiff has also presented vigorous arguments, both in the trial court and on appeal, that the Special Use Permit itself bars Defendants from enforcing the waiver. While she principally bases her argument on Colorado case law finding contracts void as against public policy, she also states that "Defendants are prohibited from enforcing [the waiver] by the special use permit," (Appellant's Br. at 11), that "[i]n accepting these provisions, Defendants have waived any claim that they may have concerning Plaintiff's waiver of liability," (Appellant's App. at 108), and that "[t]his special use permit precludes Defendants from later attempting to

---

3. We do not hold that, if the APA is followed, a Special Use Permit would constitute a federal regulation with the force of law. We merely state that such a Permit cannot be a regulation if the APA is not followed. We express no opinion concerning what circumstances, if any, would lead us to conclude that a Special Use Permit constitutes a federal regulation.

shift responsibility they voluntarily assumed onto a member of the class of people they agreed to protect as part of getting the special use ·permit." *(Id.)* Both of these arguments basically claim not that the waiver is void, but rather that the Special Use Permit prevents Defendants from enforcing an otherwise valid release.

1

This is essentially a claim that Plaintiff is a third-party beneficiary of an agreement between Defendants and the United States that Defendants will not seek liability waivers. While the term "third-party beneficiary" appears nowhere in the record or the briefs, we find that it was adequately raised both in the district court and on appeal. In addition, the trial court implicitly ruled on this issue when it stated that "it appears that the intent of the United States [regarding the liability provisions of the Special Use Permit] is to protect itself from being sued in case of an accident, not to make the permittee strictly liable for the actions of clients on the Forest Service property." (Appellant's App. at 180.) The intent of the United States, while largely irrelevant to Plaintiff's public policy argument, is the critical issue in a third-party beneficiary claim. We therefore reach the merits of the third-party beneficiary issue.[4]

2

■■■ An initial question is whether the third-party beneficiary issue, growing as it does from a contract with the federal government, is controlled by federal or state common law. Our cases have established that federal law does not automatically control claims by third-party beneficiaries of federal contracts. Rather, we have held in light of *Clearfield Trust Co. v. United States,* 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943), and *Miree v. DeKalb County,* 433 U.S. 25, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977), that

when the federal government has an articulable interest in the outcome of a dispute, federal law governs. Thus, if diverse resolutions of a controversy would frustrate the operations of a federal program, conflict with a specific national policy, or have some direct effect on the United States or its treasury, then federal law applies.

*Howard v. Group Hosp. Serv.,* 739 F.2d 1508, 1510–11 (10th Cir.1984) (finding that a claim by a third-party beneficiary of a government contract with a health care provider is controlled by state law) (citations omitted).

We have already concluded above that there is no "specific national policy" on the issue of liability waivers. We similarly see no basis for concluding that such waivers would frustrate any federal operations or directly affect the federal government. We therefore conclude that any third-party beneficiary claim is controlled by the law of the state of Colorado.

3

■■■ Under Colorado law,

[a] person not a party to an express contract may bring an action on such contract if the parties to the agreement intended to benefit the non-party, provided that the benefit claimed is a direct and not merely an incidental benefit of the contract. While the intent to benefit the non-party need not be expressly recited in the contract, the intent must be apparent from the terms of the agreement, the surrounding circumstances, or· both.

*E.B. Roberts Constr. Co. v. Concrete Contractors, Inc.,* 704 P.2d 859, 865 (Colo.1985) (citations omitted).

In this instance, the issuance of the special use permit was for the purpose of benefiting the public in its recreational enjoyment of the public lands. Specific clauses were put in for the benefit of Defendants' clients, such

---

4. Plaintiff's decision to plead this case as a diversity action does not prevent our consideration of the third-party beneficiary claim. We find below that Plaintiff's claimed rights as a third-party beneficiary are controlled by state, not federal law.

In any event, a contrary resolution of the governing law would not change the procedural posture of the case. This issue arises as a response to the affirmative defense of waiver. Any aspect of federal law therefore does not appear on the face of a well-pleaded complaint, so the claim could not arise under the federal court's federal question jurisdiction. *See Louisville & N.R. Co. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908).

as provisions requiring that the services in question be provided on a nondiscriminatory basis, and that the permittee monitor avalanche forecasts. Any agreement not to seek waivers of liability for negligence would also indisputably be for the benefit of Defendants' clients. If such an agreement exists between Defendants and the government, Plaintiff would be a third-party beneficiary of that agreement under Colorado law and would be entitled to enforce it, thus voiding the waiver that she signed.

### 4

■ The relevant portion of the Special Use Permit states that "[t]he permittee shall be solely responsible and liable for any and all accidents, injuries, and other costs incurred as a result of exercising the privileges granted under this permit," and that "[t]he permittee is responsible for the health and safety of clients he guides on the National Forest." (Appellant's App. at 123.) We agree with the district court's conclusion that the meaning of these provisions is "unclear." (*Id.* at 179.) While there are other aspects of the agreement that address the indemnification the United States, these provisions may be read as merely reiterating the protection of the national fisc. At the other extreme, they could be read as requiring Defendants to act as insurers for their clients. Or, they could be given the construction Plaintiff urges, as merely forbidding Defendants from contracting away their own negligence. Thus, we conclude that the meaning of this contract is ambiguous under Colorado law.[5]

■ Despite its conclusion that the terms of the contract were unclear, the dis-

trict court went on to state that, in light of the other provisions of the contract,

> it appears that the intent of the United States is to protect itself from being sued in case of an accident, not to make the permittee strictly liable for the actions of clients on the Forest Service property. Consequently, the Special Use Permit does not preclude the enforcement of the Release.[6]

(Appellant's App.Ex. D at 7.) Under Colorado law, this conclusion was error.

■ In Colorado, "[o]nce a contract is determined to be ambiguous, the meaning of its terms is generally an issue of fact to be determined in the same manner as other disputed factual issues." *Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1314 (Colo.1984). As one court has stated,

> [O]nce it has been determined that an ambiguity [in a contract] exists, and where the construction to be given a contract depends upon extrinsic facts and circumstances, then the terms of the contract are generally issues of fact—not law—and as such are to be determined in the same manner as other disputed factual issues, i.e. by either a jury or ... by the trial court sitting without a jury.

Thus, after having found the terms of the contract to be ambiguous and in need of interpretation, the court should have denied the motion for summary judgment.

*Palipchak v. Kent Constr. Co.*, 554 P.2d 718, 719 (Colo.Ct.App.1976) (quoting *Metropolitan Paving Co. v. Aurora*, 449 F.2d 177, 181 (10th Cir.1971)).

---

5. Defendants do not dispute in their brief that the contract is ambiguous.

6. Given the equivocal word "appears" and the prior statement that the terms of the Permit are "unclear," we do not believe that the district court concluded in the passage quoted above that the meaning of the Permit was unambiguous. However, our resolution of this case does not turn on this question.

The determination that a contract is unambiguous is a question of law, subject to de novo review. *Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1314 (Colo.1984). It is the rule in Colorado that "[a]n integrated contract in the

first instance is to be interpreted in its entirety with the end in view of seeking to harmonize and to give effect to all provisions so that none will be rendered meaningless." *Id.* at 1313. Thus, the trial court would have been justified in seeking to determine the existence of an ambiguity with reference to the rest of the contract. Nevertheless, the vagueness of the Permit leads us to conclude that its terms are "ambiguous, unclear or uncertain." *Barnes v. Van Schaack Mortgage*, 787 P.2d 207, 209 (Colo.Ct.App.1990) (citing *Pepcol*). To the extent that the district court may have made the legal conclusion that the Permit was unambiguous, we cannot agree.

Defendants argue that affirmance is nevertheless justified, because Plaintiff failed to provide extrinsic evidence supporting her reading of this ambiguous contract. We disagree. The ambiguity of the language in the Permit, standing alone, presents a disputed issue of material fact as to what the Defendants and the Government agreed. While Plaintiff may present extrinsic evidence to the trier of fact in support of its resolution of the ambiguity, it is under no obligation to do so. Rather, for Defendants to prevail on summary judgment, it is incumbent on them to demonstrate to the court that there is no genuine issue of material fact. Defendants can only do so by showing, as a matter of law, that the Permit unambiguously supports their position.

■■■ We do not hold that Defendants can never make such a showing. We merely hold that the language of the Permit, standing alone, is ambiguous. In Colorado, however, a court determining whether a contract is ambiguous "may consider extrinsic evidence bearing upon the meaning of the written terms, such as evidence of local usage and of the circumstances surrounding the making of the contract." *KN Energy, Inc. v. Great Western Sugar Co.,* 698 P.2d 769, 777 (Colo.), *cert. denied,* 472 U.S. 1022, 105 S.Ct. 3489, 87 L.Ed.2d 623 (1985). Defendants are at liberty to renew their motion for summary judgment with the support of extrinsic evidence which shows that, when read in context with the surrounding circumstances, the Permit unambiguously does not void the waiver at issue in this case.

The judgment is AFFIRMED IN PART and REVERSED IN PART. The case is REMANDED for further proceedings consistent with this opinion.

BRORBY, Circuit Judge, respectfully dissenting.

Ms. Anderson's claim should be dismissed on the basis of the liability waiver which is valid under Colorado law. I disagree with the majority opinion to the extent it construes the United States Forest Service Permit ("Forest Service Permit") as a contract and Ms. Anderson a third-party beneficiary.

As an initial matter, it is clear from the record that Ms. Anderson did not raise a third-party beneficiary claim nor did she contemplate such a claim. Appellee did not have an opportunity to respond and I would therefore not address the issue. Even if we reach the claim, however, I do not believe Ms. Anderson was a third-party beneficiary of the Forest Service Permit. Under the Administrative Procedure Act (APA) a Forest Service Permit is a license. The APA provides that: a " 'license' includes the whole or a part of an agency permit, certificate, approval, registration, charter, membership, statutory exemption or other form of permission." 5 U.S.C.A. § 551(8) (1977). The Forest Service Permit falls within this definition. Similarly, the Forest Service Permit fits well within the general definition of a license. *Black's Law Dictionary* at 829 (5th ed. 1979) defines "license" as: "The permission by competent authority to do an act which, without such permission, would be illegal, a trespass, or a tort." The Forest Service Permit was such a grant of permission and was therefore, and otherwise, a simple license.

In general, a license is not a contract. *United States v. Smith,* 39 F.2d 851, 856 (1st Cir.1930); *Black's Law Dictionary* at 829 (5th ed. 1979) ("A license is not a contract between the state and the licensee, but is a mere personal permit"); *cf. Alabama Power Co. v. Federal Power Comm'n,* 128 F.2d 280, 288–89 (D.C.Cir.), *cert. denied,* 317 U.S. 652, 63 S.Ct. 48, 87 L.Ed. 525 (1942) (a license is a privilege from the sovereign). This basic rule of law makes the majority's third-party beneficiary analysis inapplicable. Although in some context contract law aids interpretation of Forest Service Permits, *see Meadow Green–Wildcat Corp. v. Hathaway,* 936 F.2d 601 (1st Cir.1991) (Forest Service not given deference in interpreting terms of a Forest Service permit), I find the majority's analysis erroneous in this case. The majority's view is that members of the public may sue on a contract theory for the breach of Forest Service Permits. Under this view, any member of the public who has standing may sue to enforce provisions of a Forest Service Permit that are intended to protect the public. Such a broad doctrine has serious implications and for that reason is unwise.

I also disagree with the scope of the majority's discussion of Colorado law. The majority holds the Forest Service Permit is not a regulation or a statute or otherwise a law. Following this reasoning, the majority concludes Colorado law would not void as contrary to public policy a contract that contradicted a clearly expressed policy in a Forest Service Permit. The majority believes that because the Forest Service Permit is not a statute or regulation, the public policy doctrine is not applicable. This analysis is unnecessary. Colorado law voids contracts that are contrary to public policy as clearly expressed in the law. A basic prerequisite for the doctrine, therefore, is that the policy be clearly expressed. Here, the district court concluded the policy expressed in the Forest Service Permit was unclear. The public policy exception, therefore, was inapplicable. This holding by the district court is consistent with the record and should be affirmed.

As previously stated, a Forest Service Permit may have some attributes of a contract and contract law may therefore be applicable in giving effect to the terms of the license. On the other hand, Forest Service Permits may have some characteristics of regulations; for example, some Forest Service Permits are issued only after a period of public comment. To the extent Forest Service Permits are like regulations, it may be desirable in some instances to treat Forest Service Permits as regulations. For these reasons, this court should limit the scope of its holding by simply finding the Forest Service Permit unclear as to whether a permittee was required to insure its patrons and thus hold the public policy exception inapplicable.