**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**Filed 5/7/96**

**TENTH CIRCUIT**

---

| | |
|---|---|
| DEBRA K. ANDERSON,<br><br>     Plaintiff-Appellant,<br><br>v.<br><br>WILLIAM R. EBY, CHERI EBY, JANE DOE, WILDERNESS VENTURES, LTD., a suspended Colorado corporation d/b/a MOUNTAIN MEADOW TOURS LTD., also d/b/a LOST LAKE LODGE AND RESORT LTD., also d/b/a RENDEZVOUS OUTFITTERS AND GUIDES LTD.,<br><br>     Defendants-Appellees. | No. 95-1124 |

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 90-K-1884)**

---

Grant Marylander (Jim Leventhal and Natalie Brown of Leventhal & Bogue, P.C., with him on the brief), Denver, Colorado, for Plaintiff-Appellant.

Christina M. Habas of Watson, Nathan & Bremer, P.C., Denver, Colorado, for Defendants-Appellees.

---

Before **BRORBY** and **KELLY**, Circuit Judges, **and McWILLIAMS**, Senior Circuit Judge.

---

**McWILLIAMS, Senior Circuit Judge.**

On February 15, 1990, Debra K. Anderson, the plaintiff-appellant, participated in a snowmobile tour operated by the defendants-appellees involving a round-trip from Crested Butte, Colorado, to Lake Irwin Lodge. The tour was conducted on property owned by the United States Forest Service pursuant to a Special Use Permit issued to the defendants by the Forest Service in December 1989 (the "Permit"). Prior to embarking on the tour, Anderson signed a Release and Indemnity Agreement which relieved the defendants "from all liability . . . for any and all loss, personal injury or damage . . . whether caused by the negligence of [the defendants] or otherwise while [Anderson] is participating in the rental of snowmobiles or other equipment and participating in a snow tour or other activity of [defendants]" (the "Release"). While on the guided tour, Anderson's snowmobile crashed and she was severely injured.

Anderson brought a negligence action against defendants on October 24, 1990, in the United States District Court for the District of Colorado, seeking damages for injuries she suffered in the snowmobile accident. Jurisdiction was based on diversity of citizenship. 28 U.S.C. § 1332. Anderson alleged, *inter alia,* that defendants were negligent in traveling at excessive speeds and in allowing her to become separated from the main group of snowmobiles.

By answer, the defendants denied that they were in any way negligent and affirmatively alleged that Anderson's claims were barred by the Release, which she voluntarily signed prior to the ill-fated tour. Defendants then moved for summary judgment. The district court, based

on the Release, granted summary judgment in favor of the defendants.   Anderson appealed, and we reversed.  *Anderson v. Eby*, 998 F.2d 858 (10th Cir. 1993) (J. Brorby dissenting) (hereinafter *Anderson I*).

In *Anderson I* we held  that the release was valid under Colorado law, and by its "plain language . . . clearly and unambiguously states an intent to release Defendants from claims for negligence." *Anderson I* at 863.   However, we reversed, finding that Anderson was a third party beneficiary under the Permit.  In this particular connection, we stated that "[t]his is essentially a claim that Plaintiff is a third party beneficiary of an agreement between Defendants and the United States that Defendants will not seek liability waivers." *Id.* at 864. Accordingly, we proceeded to consider the third party beneficiary issue on its "merits." In that regard, we concluded that certain provisions in the Permit were unclear and ambiguous, and arguably were subject to the construction argued for by Anderson; namely, that the Permit precluded the defendants from obtaining releases from their clients for their own negligence. In reaching this conclusion, we relied on the following language in the Permit:

> The permittee shall be solely responsible and liable for any and all accidents, injuries, and other costs incurred as a result of exercising the privileges granted under this permit. . . . The permittee is responsible for the health and safety of clients he guides on the National Forest."

In concluding that the above-quoted language in the Permit was unclear and ambiguous, we spoke in *Anderson I* as follows:

> While there are other aspects of the agreement that address the indemnification of the United States, these provisions may be

- 3 -

read as merely reiterating the protection of the national fisc. At the other extreme, they could be read as requiring Defendants to act as insurers for their clients. Or, they could be given the construction Plaintiff urges, as merely forbidding Defendants from contracting away their own negligence. Thus, we conclude that the meaning of this contract is ambiguous under Colorado law.

In remanding the case to the district court for further consideration, we opined as follows:

> [F]or Defendants to prevail on summary judgment, it is incumbent on them to demonstrate to the court that there is no genuine issue of material fact. Defendants can only do so by showing, as a matter of law, that the Permit unambiguously supports their position.
>
> We do not hold that Defendants can never make such a showing. We merely hold that the language of the Permit, standing alone, is ambiguous. In Colorado, however, a court determining whether a contract is ambiguous "may consider extrinsic evidence bearing upon the meaning of written terms, such as evidence of local usage and of the circumstances surrounding the making of the contract." Defendants are at liberty to renew their motion for summary judgment with the support of extrinsic evidence which shows that, when read in context with the surrounding circumstances, the Permit unambiguously does not void the waiver at issue in this case.

*Anderson I* at 866 (citations omitted).

On remand, the deposition of Stanley E. Allgeier, a recreational staff officer with the United States Forest Service, was taken and received by the district court. Defendants again moved for summary judgment, arguing that Allgeier's deposition resolved in their favor the ambiguity perceived by us in the Permit. Anderson also moved for summary judgment "on

- 4 -

the issue of the validity of the release." The district court, after hearing, granted defendants' motion for summary judgment and denied Anderson's motion as moot. *Anderson v. Eby*, 877 F. Supp. 537 (D. Colo. 1995) (hereinafter *Anderson II* ). In so doing, the district court found that "[d]efendants have adduced sufficient evidence to resolve the perceived ambiguity in the Special Use Permit" and concluded that "Plaintiff has failed to refute that evidence sufficiently to prevent entry of summary judgment against her under Fed. R. Civ. P. 56(e)." *Anderson II* at 540.

On appeal, Anderson asks that we reverse the judgment entered by the district court and remand the case for trial on its merits. Counsel in his brief states that the two issues to be resolved on appeal are as follows:

> I.      Whether the district court erred in refusing to consider provisions of the United States Forest Service Manual which proscribe permittees under a Special Use Permit from obtaining releases which insulate their own negligent conduct.

> II.     Whether the district court erroneously acted as the trier of fact when it concluded there was no substantial extrinsic evidence that the U.S. Forest Service intended to bar a permittee from obtaining a release of its negligent conduct.

As indicated, in *Anderson I* we held that Anderson was a third party beneficiary under the Permit, and that the Permit itself was ambiguous as to whether the defendants could enforce an otherwise valid Release signed by Anderson. In her motion for summary judgment on remand, Anderson argued that the Permit, *inter alia*, required the defendants to comply with regulations of the Department of Agriculture. She further argued that certain

interpretative regulations issued by the Department of Agriculture and contained in the Forest Service Special Uses Management Manual (the "Manual"), only allow a permittee to absolve himself of liability for injuries caused by the inherent risk of the activity. Under Anderson's theory, these regulations do not allow a permittee to limit its liability for injuries caused by the permittee's own negligence. The district court, in *Anderson II*, rejected this argument. On appeal, as in the district court, Anderson contends that Forest Service interpretative regulations prohibit the defendants from obtaining, and enforcing, the Release voluntarily given them by Anderson. At the very least, she argues, they constitute "substantial extrinsic evidence" that forecloses entering summary judgment in favor of the defendants.

Anderson points out that 36 C.F.R. § 251.56(a)(2)(iv) (1994) provides that each special use authorization shall contain "[s]uch terms and conditions as the authorized officer deems necessary to . . . protect lives and property." She then claims that § 2713.32 of the Manual explains the intent underlying 36 C.F.R. § 251.56(a). Section 2713.32 of the Manual reads as follows:

> A certain element of risk is involved for individuals engaging in most activities on National Forests. Swimming, boating, skiing, riding, mountain climbing, and even hiking, camping, and picnicking involve such risks in varying degrees.

> Individuals engaging in these activities are expected to assume these usual risks. If safe operation, safe equipment, and good supervision are provided by concession permittees, it is reasonable to expect participants, personally, to assume risks from accidents not related to provision and operation of safe equipment in safe condition, such as might result from being thrown off a horse, upsetting in a boat, encountering dangerous

- 6 -

weather, or being injured by snakes or other wild animals.

All public-use facilities provided by concession permittees will be safe for public use and will be operated in a safe manner. To protect the user and the Federal Government from losses for which the permittees may be liable, the Forest Service will require permittees to carry public liability insurance that names the Government as a coinsured whenever this is in the public interest and practicable.

Anderson argues that the "manifest intent"of § 2713.32 of the Manual is that the general public is required to assume only "those risks inherent in the activities involved." That may well be correct, but such does not solve our problem. We are here concerned with a release voluntarily given defendants by Anderson; we are not concerned with an "assumption of risk," as such. While Anderson, under § 2713.32, may not have assumed any risk of injuries resulting from defendants' negligence, it does not follow that § 2713.32 proscribes the defendants from obtaining and enforcing a release as a condition of the contract between the defendants and Anderson. We note that in the third paragraph of § 2713.32, there is a provision that to protect the users and the Federal Government from losses for which the permittee might himself be liable, the permittee is required to carry public liability insurance. Clearly, that section contemplates that there indeed may be instances where a permittee is liable for injuries to a user caused by a permittee's negligence. But that does not mean, or even suggest to us, that a permittee is proscribed from asking for, and receiving, a release from the user before the user commences his activity on government land. In short, we reject the suggestion of counsel that the aforementioned regulations preclude a permittee from obtaining, and enforcing, a release of the sort given the defendants by Anderson. Nor

do the regulations indicate that there is a genuine issue of material fact as to the meaning of the Permit so as to preclude summary judgment in favor of the defendants.[1]  Indeed, the regulations indicate to us that there was no "policy" of the Forest Service which prohibited the defendants from obtaining, prior to the tour, a release from Anderson for injury resulting from defendants' negligence.

As indicated, Stanley E. Allgeier, a Forest Service recreational staff officer and an employee of the Forest Service for some 29 years, was deposed and examined and cross-examined by counsel for Anderson and for the defendants.  While his testimony in some instances was a bit confusing, certainly it is clear from his testimony that the Forest Service in 1989-90 had no policy, be it in or out of the Manual, which prohibited a permittee from obtaining and enforcing a release such as the one in the instant case.  We reject the suggestion by counsel that 36 CF.R § 251.56(a) allows a permittee to obtain a release only for injuries growing out of the inherent risk of the activity involved.

In sum, we agree with the district court that the ambiguity in the Permit perceived in *Anderson I* is resolved by the record before it.  It is clear to us that the regulations relied on by Anderson are intended to protect the national fisc.

Judgment affirmed.

---

[1]  In *Anderson I*, we rejected Anderson's claim that because the release is contrary to federal policy, the release is invalid under the Colorado doctrine that "private parties may not by agreement or rule render ineffective rules and standards provided by statute," stating that the difficulty with that particular argument was that there was a "lack of a clear policy expressed in federal statutes." *Anderson I* at 863.  In so doing, we specifically rejected the suggestion that 36 C.F.R. § 251.56(a) expressed a "firm federal policy" against release of the present type. *Id.*