**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 19, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MONIQUE SALAZAR, individually and
as surviving spouse of William Bradford,
deceased; WALTER SALAZAR
BRADFORD, a minor child of William
Bradford, deceased, by and through his
parent and next friend, Monique Salazar;
WILLIAM SALAZAR BRADFORD, a
minor child of William Bradford,
deceased, by and through his parent and
next friend, Monique Salazar,

      Plaintiffs-Appellants,

v.

ON THE TRAIL RENTALS, INC., a
Colorado corporation,

      Defendant-Appellee.

No. 12-1144
(D.C. No. 1:11-CV-00320-CMA-KMT)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **GORSUCH**, **ANDERSON**, and **EBEL**, Circuit Judges.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

William Bradford was killed when he crashed into a tree while riding a snowmobile he had rented from On the Trail Rentals, Inc. ("OTR"). Mr. Bradford's wife, Monique Salazar, and their minor children, Walter and William Salazar Bradford, (collectively "plaintiffs") subsequently brought this diversity suit against OTR for the wrongful death of Mr. Bradford. OTR moved for summary judgment based on a release of liability that Mr. Bradford had signed at the time of rental, and the district court granted the motion. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court's judgment.

I

When Mr. Bradford rented the snowmobile, he signed a rental agreement that included the following release of liability:

> Although the equipment leased to me by Lessor is appropriate so that I might enjoy an activity at which I may not be skilled, Lessor has informed me and I understand that this activity is not without ***substantial risk***. These inherent risks can be the cause of loss or damage to my property, or accidental injury, illness or in extreme cases, permanent trauma or death. Among these risks are the following: (1) the nature of the activity itself; (2) the acts or omissions, negligent in any degree, of Lessor, it's [sic] agents and employees; (3) the acts or omissions, negligent in any degree, of other persons or entities; (4) latent or apparent defects or conditions in equipment or property supplied by Lessor; (5) weather; (6) use or operation, by myself or others, of equipment supplied by Lessor or others; (7) exposure to noise and exhaust; (8) contact with vegetation or animals; (9) my own physical, mental or emotional condition, or my own acts or omissions; (10) conditions of snow, roads, trails, lakes, fences or terrain, and accidents in connection therewith . . . . I understand and acknowledge that the above list is not complete or exhaustive, and that other risks, known or unknown, identified or unidentified, may also result in ***injury, death, illness or disease or damage to property***. . . .

Being aware that this activity entails risks, I agree, covenant and promise and assume all responsibility or liability and risk for injury, death, illness, disease, or damage to property arising out of or in any way connected with the participation in this activity to myself. My participation in this activity is purely voluntary, no one is forcing me to participate, and I elect to participate in spite of and with full knowledge of the risks. I hereby certify that I am fully capable of participating in this activity.

I hereby voluntarily release and forever discharge Lessor, its agents, shareholders, officers, directors, and employees, and all other persons or entities from any and all liability, claims, demands, actions or rights of action, loss, damages, injury to persons or property, which are related to, arising out of or in any way connected with my participation in this activity or use of the leased equipment, including specifically but not limited to the negligent acts or omissions of Lessor, its agents and employees, and all other persons or entities, including attorney's fees and costs incurred.

I further agree, promise and covenant to hold harmless and indemnify Lessor, its agents, shareholders, officers, directors, and employees, and all other persons or entities for any injury to person or property, death, illness, disease or damage, expenses and costs including reasonable attorney's fees. I further agree, promise and covenant to waive any and all rights, claims, causes of action or rights to a certain claim which I may have or acquire against Lessor. I further agree, promise and covenant not to sue, assert or otherwise maintain or assert any claim against Lessor, its agents, shareholders, officers, directors or employees, and all other persons or entities, for any injury, death, illness or disease, or damage to my property, arising out of or in any way connected with my participation in this activity.

***I understand and acknowledge that by signing this document I have given up certain legal rights or possible claims which I might otherwise be entitled to assert or maintain against Lessor, its agent, shareholders, officers, directors and employees, and other persons or entities, including specifically, but not limited to, claims of negligence in any degree of Lessor, its agents and employees.***

Aplt. App. at 53. Mr. Bradford also indicated on the rental agreement that he had

previously ridden "a few times." *Id.* at 54.

Following the accident, plaintiffs filed this suit, claiming OTR's negligence caused the wrongful death of Mr. Bradford. OTR moved for summary judgment, arguing that the release signed by Mr. Bradford barred the claim. Plaintiffs countered that the release was ambiguous because it did not specifically bar *their* claim as non-signatories. The district court entered judgment in favor of OTR, concluding that Mr. Bradford had executed an enforceable exculpatory release that clearly and unambiguously expressed the parties' intent to extinguish OTR's liability. The court reasoned that "[a]lthough there is some ambiguity in the Rental Agreement in that it does not expressly preclude Plaintiffs from bringing a wrongful death action, . . . any such ambiguity is irrelevant" because Colorado law limits such claims to those the decedent could have brought. *Id.* at 84. Thus, because Mr. Bradford had released any claims he might have brought, plaintiffs' claim was barred as well.

II

We review the district court's grant of summary judgment de novo, applying the substantive law of the forum state. *Mincin v. Vail Holdings, Inc.*, 308 F.3d 1105, 1108 (10th Cir. 2002). In Colorado, "[a]greements attempting to exculpate a party from that party's own negligence have long been disfavored." *Heil Valley Ranch, Inc. v. Simkin*, 784 P.2d 781, 783 (Colo. 1989) (en banc). Nevertheless, exculpatory agreements may be upheld depending upon the court's consideration of the following four factors: "'(1) the existence of a duty to the public; (2) the nature of the service performed; (3) whether the contract was fairly entered into; and (4) whether the

intention of the parties is expressed in clear and unambiguous language.'" *Id.* at 784 (quoting *Jones v. Dressel*, 623 P.2d 370, 378 (Colo. 1981)).

The only factor contested in this appeal is the fourth—whether the intention of the parties is expressed in clear and unambiguous language. Ambiguity exists when a contractual term "is susceptible to more than one reasonable interpretation." *Mincin*, 308 F.3d at 1112. If an exculpatory agreement "is unclear or ambiguous, it is void as a matter of law." *Anderson v. Eby*, 998 F.2d 858, 862 (10th Cir. 1993) (applying Colorado law). But the talismanic invocation of specific terms is not dispositive of whether or not an exculpatory agreement is ambiguous; what matters is "whether the intent of the parties was to extinguish liability and whether this intent was clearly and unambiguously expressed." *Heil Valley Ranch*, 784 P.2d at 785; *see also Chadwick v. Colt Ross Outfitters, Inc.*, 100 P.3d 465, 467 (Colo. 2004) (en banc) ("Although the agreement must be clear, unambiguous, and unequivocal, we have also made clear that the specific terms 'negligence' and 'breach of warranty' are not invariably required for an exculpatory agreement to shield a party from claims based on negligence and breach of warranty.").

The release signed by Mr. Bradford clearly and unambiguously waives any claims he might have brought against OTR. In plain terms, the release warns the signer in bold, italicized font that snowmobiling involves substantial risk, including the risk of death, and without undue length or legal jargon, it releases OTR from any claims for death arising out of the activity. *See Heil Valley Ranch*, 784 P.2d at 785

(noting such considerations as the simplicity and clarity of terms, the use of legal jargon, and whether the agreement was "inordinately long or complicated"). The release also states that the signer "assume[s] all responsibility or liability and risk for . . . death . . . arising out of or in any way connected with the participation in this activity to myself." Aplt. App. at 53. Additionally, the release provides that the signer "understand[s] . . . that by signing this document, I have given up certain legal rights or possible claims which I might otherwise be entitled to assert . . . against [OTR], including specifically, but not limited to, claims of negligence . . . ." *Id.* (bolding and italics omitted). We perceive no ambiguity in this language.

Plaintiffs, however, contend the release is ambiguous because it uses the terms "I," "myself," and "me" to release only the potential claims of Mr. Bradford as the signer of the release, not the claims of non-signatories like plaintiffs. They argue that these terms make it unclear whether Mr. Bradford could have known he was releasing the claims of his wife and children; they also make much of the district court's observation that "there is some ambiguity in the Rental Agreement in that it does not expressly preclude Plaintiffs from bringing a wrongful death action," Aplt. App. at 84. Therefore, insist plaintiffs, the court should have invalidated the release as ambiguous rather than deem the ambiguity irrelevant. Plaintiffs' argument is unavailing.

Colorado's wrongful death statute limits wrongful death claims to those that could have been brought by the decedent if he or she had survived.

- 6 -

*See* Colo. Rev. Stat. § 13-21-202 (providing that an entity that caused a wrongful or negligent act resulting in death is liable to the same extent it would have been liable to the injured party if death had not occurred).[1] This means that if Mr. Bradford had no right to prosecute a claim, neither do plaintiffs. *See Sigman ex rel. Sigman v. Seafood Ltd. P'ship I*, 817 P.2d 527, 530 (Colo. 1991) (en banc) ("Pursuant to Colorado's wrongful death statute, the plaintiffs can maintain an action only if [the decedent] could have done so had his injuries not been fatal."). Mr. Bradford relinquished any claims he might have brought against OTR by signing the release, and thus plaintiffs are barred from pursuing their claim by operation of § 13-21-202. Accordingly, the district court was correct that the absence of an express prohibition on plaintiffs' claim is irrelevant.

Plaintiffs acknowledge § 13-21-202 and its effect, but they argue that because Mr. Bradford could not have prosecuted a claim for his own death, *see* Aplt. Br. at 13 ("Bradford could not have brought a claim for his own 'death'—simply, he would be dead."), it is unclear whether the release encompassed such a claim. This strained

---

[1] The statute provides:

> When the death of a person is caused by a wrongful act, neglect, or default of another, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who or the corporation which would have been liable, if death had not ensued, shall be liable in an action for damages notwithstanding the death of the party injured.

Colo. Rev. Stat. § 13-21-202.

argument ignores the express language of the release, however, which broadly extinguishes liability for claims of death "arising out of or in any way connected with my participation in this activity." Aplt. App. at 53. This provision, which does not specify who might bring a claim, clearly contemplates claims brought by non-signatories for the death of the snowmobile operator.[2] And, lest there be any lingering doubt, the wrongful death statute, which we have already recognized binds plaintiffs to the terms of this release, precludes their claim as a matter of law. Plaintiffs' interpretation would be inconsistent with both § 13-21-202 and the express language of the release. In keeping with Colorado law, we decline to adopt an unreasonable interpretation of the release agreement. *See Chadwick*, 100 P.3d at 469.

Accordingly, the judgment of the district court is AFFIRMED.

Entered for the Court

Stephen H. Anderson
Circuit Judge

---

[2]     This represents a distinction with *Rowan v. Vail Holdings, Inc.*, where the decedent signed a release purporting to bind his "estate and heirs" to a waiver of liability for "any and all claims I might state." 31 F. Supp. 2d 889, 899 (D. Colo. 1998). Reasoning that "claims 'I' might state are, by necessity, limited to those of the signatory," the court found the release ambiguous "as to whether it applie[d] to a wrongful death action" because "[the decedent] could not assert such a claim on his own behalf. *Id.* Here, there is no similar provision binding plaintiffs to a waiver of claims that Mr. Bradford could not have made.